118 F.Supp. 612 (1954)
COLE CHEMICAL CO.
v.
COLE LABORATORIES, Inc. et al.
No. 8832(2).
United States District Court E. D. Missouri, E. D.
February 8, 1954.
*613 Bruninga & Sutherland, John H. Sutherland and Philip B. Polster, St. Louis, Mo., for plaintiff.
Kingsland, Rogers & Ezell, Estill E. Ezell and Glenn K. Robbins, St. Louis, Mo., Dubail & Judge, St. Louis, Mo., of counsel, for defendant.
HULEN, Judge.
Plaintiff seeks an injunction to enforce compliance with a contract made in settlement of a trade-mark controversy in 1941. In the alternative plaintiff would abandon the contract, recover damages for unfair competition, and ask for injunctive relief against use of plaintiff's trade-mark. Both diversity and federal law, together with amount in controversy, give the court jurisdiction.
Defendant affirms the contract and pleads estoppel resulting from acquiescence by plaintiff in use of the trademark. A counterclaim asks cancellation of one of plaintiff's trade-marks for fraud in procurement.
We conclude plaintiff is entitled to injunctive relief to force compliance with the contract and to protect its mark. The breach of the contract by defendant does not justify its abandonment. Defendant failed to sustain its special defenses.
Plaintiff was originated by Barzillai L. Cole, operating under the trade-mark "Cole's" in manufacturing and selling pharmaceuticals. The place of business was in St. Louis, Missouri. The business was incorporated in 1920. Plaintiff is the owner of trade-mark Registration No. 274,159 and No. 563,761  "Cole" and "Cole's". Plaintiff's trade-marks and trade name, and the products sold under them, have been widely publicized and sold throughout the United States and in foreign countries. The trademarks acquired a secondary meaning prior to defendant's incorporation as Cole Chemical Corporation in 1935. Such secondary meaning designates plaintiff as the source of pharmaceuticals and related products such as disinfectants and antiseptics bearing plaintiff's trade name and marks. Plaintiff sells its products principally to drug suppliers, drug stores, doctors, clinics, and hospitals. "Cole" is a well known name in the drug trade and among the medical profession, and is understood to refer to plaintiff's products only. Throughout the period of plaintiff's business history and that of its predecessor it has built up a valuable reputation and its marks carry with them the high esteem plaintiff enjoys among the trade.
The president of defendant is David Catts. Prior to her marriage his wife adopted the name M. V. Cole for a stage name. She married Catts in 1929. The original company was a partnership owned by the husband and wife. They did business as M. V. Cole Company. In 1935 they incorporated as the Cole Chemical Corporation.
Plaintiff brought suit in 1940 against the Cole Chemical Corporation and David Catts, its president. Infringement of plaintiff's registered trade-mark and unfair competition were charged. That suit was terminated in January, 1941, under an agreement. This agreement provided:
"2. First Parties [defendants] further agree that on and after March 1, 1941, they will not sell or offer for sale any product or preparation listed in the United States Pharmacopoeia under a label or in a package upon which the name Cole is featured, beyond the extent of being included as a part of the name Cole Laboratories, Inc.
"3. First Parties further agree that if after June 30, 1941, they sell, or offer for sale, any pharmaceutical or medicinal preparations directly or indirectly to the drug (wholesale or retail) trade, hospitals, *614 dispensaries, clinics or the medical or surgical professions, the name `Cole' shall not in anywise appear on labels, packages, or advertising matter appertaining to the same; but nothing herein contained shall be construed as prohibiting First Parties from selling said products in said trade channels through an affiliated or subsidiary organization, the name of which does not include the name `Cole'."
Following execution of this contract defendant formed Retort Pharmaceutical Company, Inc. It was owned by defendant Cole Chemical Corporation and was formed to sell its pharmaceutical preparations and comply with the 1941 contract. The trade-mark "Retort" was adopted and a large number of pharmaceutical preparations have been sold under this mark since 1941.
Since the agreement of 1941, defendant has made and sold janitor supplies, including disinfectants, cleansers, deodorants and industrial chemicals, under the name Cole Laboratories, Inc. and the trade-marks "Cole" and "Speed".
There was no further controversy between plaintiff and defendant until 1952. In 1950 defendant placed on the market a product known as "Hex-O-San". It was a soap with antiseptic properties recommended for use by doctors and in hospitals. Defendant secured approval of the product by the American Medical Association. It is a pharmaceutical. It was sold under defendant's name and the trade mark "Cole". Admittedly this was a violation of the 1941 agreement. To date sales of Hex-O-San have been small. Defendant has sustained a loss in the venture.
In the summer of 1952 defendant's counsel called the sale of Hex-O-San to defendant's attention as a contract violation. Defendant claims it was then under the impression Hex-O-San was not a pharmaceutical. The result of the conference was failure of defendant to stop its activity in Hex-O-San under the name of "Cole". For that reason this suit followed October 14, 1952.
The deposition of Dr. Schaefer was taken by plaintiff. He was defendant's "expert". He classified Hex-O-San as a pharmaceutical. Defendant took it off the market as defendant's product and discontinued the use of the name "Cole" in its sale. This was avowed by defendant as an act to comply with the contract of 1941.
During the discovery procedure in this case plaintiff discovered, for the first time, that defendant had failed to adhere to the 1941 contract in other ways than the sale of Hex-O-San. Defendant has solicited pharmaceutical business in South America in its "Cole" name. It made sales to the Government in this name and in some instances the product bore the "Cole" trade-mark. Defendant has sold disinfectants in its name and bearing the trade-mark "Cole". There is a difference of opinion among the experts whether such are pharmaceuticals. The same is true of some types of soap sold by defendant. Defendant sells janitor supplies of the chemical class. Defendant also sells commercial chemicals. In 1941 defendant's business was less than $200,000 gross a year. It is now $2,000,000 annually.
Other facts bearing on specific issues will be referred to under proper divisions.

I.
The issue of abandonment is governed by well-recognized rules of law. Before defendant's violations can amount to abandonment in law, the breach must go to the substance of the contract. Defendant now unqualifiedly affirms the contract. It promises future conformity. Where there is no distinct refusal to be bound by the contract in the future by the party in default, his conduct must clearly indicate that he does not intend to be bound by its terms before abandonment can arise. Pasquel v. Owen, 8 Cir., 186 F.2d 263.
Defendant has not given its past operations such restriction as is plainly called for by the 1941 contract. Defendant *615 is subject to censure for employing a sales manager who acted for years ignorant of the existence of the 1941 agreement. He unknowingly violated the contract. This was the result of Catts' failure to take the contract seriously. It is surprising there were not more violations. Failure to recognize Hex-O-San as a pharmaceutical is another instance of loose dealing with the contract by Catts. It was only one product. It is a soap. Some soaps are in the zone of dispute. But defendant secured the approval of Hex-O-San by the American Medical Association. Why Catts failed to classify it properly is still unexplained on this record. The sales to the Army is evidence of carelessness. To what extent the Army transactions violated the contract is in doubt. That is defendant's fault. It made the contract. It is bound to conduct its business so that it can honestly declare itself free from any act that would be a contract breach. By engaging in doubtful activities defendant thereby raises some suspicion of its good faith in the whole matter.
It remains to be seen if defendant can operate its Retort Pharmaceutical Company in the same building with Cole Chemical Corporation, using the same employees, office space, and shipping facilities, and not violate the terms of the 1941 contract. Offering the excuse of mistake and confusion will not constitute a defense to future violations resulting from this cause. The cause is of defendant's own creation. If defendant's subsidiary cannot continue present operations and stay within the contract, then it will be necessary to order complete physical separation. Plaintiff's proof fails to show a substantial breach of contract.
Plaintiff is entitled to a decree that defendant comply with the terms of the 1941 contract.

II.
Defendant by counterclaim attacks the validity of plaintiff's Registration No. 563,761 for "Cole's", which plaintiff applied for in 1949. Defendant claims the registration was granted on a false representation by plaintiff as to exclusive use of the mark on deodorants for five years prior to the filing of the application. Defendant asserts it has used the trade-mark on disinfectants and deodorants since 1935, and plaintiff either knew or is charged with knowledge of such use.
Defendant points to the 1941 contract as evidence of plaintiff's knowledge of its use of the trade-mark "Cole". We read that contract as evidencing an intent of the parties that its terms bear mainly on the use of plaintiff's name, "Cole Chemical Company". The third paragraph recites defendant is "willing to change the name under which they have heretofore done business in order to avoid confusion in the trade". By paragraph 1 of the contract defendant agreed to change its name. By paragraph 2 defendant agreed not to use the name "Cole" in connection with certain products. By paragraph 3 defendant again agreed not to use the name "Cole" on certain products. These prohibitions were to render effective the change of name by defendant and not make it an empty gesture as regards plaintiff.
Defendant has objected to plaintiff changing the contract of 1941. Neither can we rewrite it for defendant. There is no affirmative permission to defendant in the contract to use plaintiff's trade-marks. There is no notice in the contract from defendant to plaintiff that defendant had, or would, after signing the contract, use plaintiff's trade-mark on anything.
Defendant relies on the testimony of its president that they had used plaintiff's trade-mark prior to 1935 on disinfectants and deodorants. We must rely entirely on his oral statement. His testimony in regard to a "letter of March 1935" casts some doubt on his powers of recollection for the period.
Defendant now, by brief, would use a letter offered in evidence by plaintiff, *616 dated March 31, 1935. The letter shows only that defendant was using the name "Cole Chemical Corporation". During the trial the president of defendant denied authority for anyone to write the letter on defendant's behalf. He emphatically denied his signature. Does he now admit it? The letter has never been identified to the point of constituting substantial evidence. Even if it were, it gives no notice of the use of the mark "Cole".
The evidence offered does not qualify as that clear and convincing proof necessary to show fraud. It lacks corroboration. It is reasonable to believe if the mark had been used, as claimed, at least one sample, or a record of some kind, would have been produced. None was offered. There is evidence of a listing by defendant in the Thomas Register for 1947, under the trade-mark "Speed", of disinfectants, sanitary chemicals and use of name "Cole-Speed" for industrial chemicals. This is inconsistent with defendant's present claims.
Defendant made a trial stipulation that neither the president, vice-president, nor attorney of plaintiff had seen a label of defendant's in which the trade name "Cole" appeared, until this suit was filed.
Plaintiff used the mark "Cole's" on disinfectants, deodorants, and fungicides in the five-year period preceding April 28, 1949, the date of filing of the application which matured into trademark Registration No. 563,761. There is no substantial evidence of use by defendant during this five-year period of "Cole's" on disinfectants, deodorants, fungicides, chemical formulas and commercial chemicals. The oath on behalf of plaintiff to substantially exclusive use, in the application under Section 2(f) of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1052(f), maturing into Registration No. 563,761 was accordingly valid.
Defendant has failed to carry the burden of proof on this issue.
Plaintiff is the owner of the trademark "Cole's", under Registration 563,761.

III.
For the reason above stated we also find against defendant on his plea of estoppel, based on alleged knowledge of plaintiff of defendant's use of the trademark by defendant long prior to this trial. There is no substantial evidence to support any such claim, other than on Hex-O-San, the subject of moving cause of this controversy.

IV.
Plaintiff and defendant, through Retort Pharmaceutical Co., are engaged in the sale of medical preparations. They are for ultimate human consumption or use. They are of numerous kinds and are prescribed to be taken in various ways. They are practically all for ailments of the human body. Confusion in such products can have serious consequences for the patient. Confusion in medicines must be avoided.
Ivers-Lee is a pill-packing concern. It has been used to pack pills for plaintiff. It has been used by defendant for the same purpose, but in its Cole name only. The presumption is that it will continue to do so. If not, then someone in a like business will be used. Because of the similarity of names between plaintiff and defendant there has been confusion of medicines sent to Ivers-Lee by plaintiff and defendant for processing, by transposing names on records and notices in the Ivers-Lee plant.
Defendant insists it has a right to do everything but sell pharmaceutical products under its name. It seems unconcerned in eliminating confusion. It argues that only when an advertisement for sale is published or a sale is made, must it be in another, or the Retort name, to meet the contract. Its brief reads:
"We note parenthetically here that plaintiff does not charge defendant's purchase of services, as at Ivers-Lee, and of supplies and *617 materials of all kinds under its trade name Cole Laboratories, Inc. as a breach of the January 7, 1941 agreement. This is because the agreement includes only the sale and offering for sale of pharmaceutical or medicinal preparations and not to the purchase of anything. We mention this fact so that no confusion will creep into the consideration of the case in respect to defendant's right to purchase materials and services under its trade name. Cole Laboratories, Inc." (emphasis added)
We cannot agree with defendant in its interpretation of the contract. It should be construed in light of the purpose it was intended to serve. It was executed to protect plaintiff's trade-mark and name. The prime purpose was to prevent unfair competition and prevent confusion of products and by similarity of names. By paragraph 1 defendant agrees:
"1. First Parties agree that they will proceed immediately to change the name of the Cole Chemical Corporation to Cole Laboratories, Inc., and that they will not, hereafter, engage in the business of dealing in pharmaceutical preparations under the name of Cole Chemical Corporation, or under any other name confusingly similar to therewith; but it is understood, that First Parties shall have the right to continue in business under the name of Cole Laboratories, Inc., except as hereinafter indicated." (emphasis added)
We believe the quoted paragraph covers the conduct complained of. Failure to use the word "sale" and use of the words "dealing in" would imply that the latter should be given broader meaning than the former. Otherwise why use them? See Saunders v. Russell, 78 Tenn. 293, where "dealing in goods" was held to imply buying as well as selling. See Webster's New International Dictionary (Second Edition, 1944):
"dealing * * * intercourse; traffic; as, to have dealings with a person. Method of business or manner of conduct."
In sending pills to Ivers-Lee for purpose of packing for sale, defendant was "dealing" in the product. If the contract does not cover the act, as defendant claims, then the contract is not subject to this interpretation and we are on a subject not covered by the contract. The general law must be followed. Either course leads to the same conclusion.
Prevention of confusion and mistakes in medicine is too vital to be trifled with. The testimony of the president of Ivers-Lee illustrates what has happened:
"Q. Mr. Volckening, in your business has there been any confusion between the Cole Chemical Company and the Cole Laboratories? A. In keeping our records, I have reviewed the files for the last two years between the two companies and I find that in the matter of keeping our book records and in the matter of sending notices as to inventories on hand, when things are to be run, sending samples for assay to the Pure Food and Drug Division, that there has been confusion in that the notices for Cole Laboratories have been sent to Cole Chemical Company through stenographic error.
In all my search there has been no confusion in the packing of the products because the products are not similar in name. Nor are they similar in structure nor do they go in the same size package.
* * * * * *
"Q. I hand you Exhibit 5 and ask you if you can identify that as one of your company records. A. That's right.
"Q. Mr. Volckening, does Exhibit 5 pertain to Exhibit 4 in any way? Is there any relation between *618 those two? A. To tell the truth, I wouldn't know. This is a form letter that is sent out in our Production Office when all materials are on hand. There is no doubt that it apparently applies to Cole Laboratories and she wrote it to Cole Chemical Company. Is Mr. Gansner in your company?
* * * * * *
"A. Empire Chemical undoubtedly sent penicillin to us for the account of Cole Laboratories. The receiving slip was written properly. The girl that typed the envelope typed Cole Chemical. So, I mean, this substantiates the position the Ivers-Lee Company takes in regard to this hearing which is, namely, that there is confusion in our various record departments relative to keeping the names Cole Laboratories and Cole Chemical Company separate without confusion, and no doubt there's been many more than one change, but as far as 
* * * * * *
"Q. Mr. Volckening, in how many departments of your business have these errors occurred? A. From the information we have seen so far I would say four."
We are at a loss to understand how any reputable medical manufacturer or supplier would voluntarily tolerate such confusion in such a vital part of its operation. Even now, in this case, it is made light of. Defendant would try to defend its continuance. Elementary logic and reason would seem to compel them to demand that conditions which can result in such confusion be rectified. Must plaintiff stand by helpless until harm has resulted to some human being. Then the search will be for the negligent party and the cause of the confusion will end with everyone pleading innocent. Why not end it now?
Defendant defends the confusion and the foundation on which it rests with the technical use of words in the contract. But defendant is confronted with a cloud on the use of its name. It is a name which defendant admitted over twelve years ago was confusingly similar to plaintiff's and they were without right to use it "in dealing" with medicines. In ordering the end to the cause for such confusion we place some burden on defendant. But it is small compared to the benefits it will force on defendant and as sought by plaintiff.
Plaintiff is entitled to an injunction decreeing that defendant refrain from using its name, or any name which is confusingly similar, in dealing with pharmaceutical or medical preparations, at or prior to their offering for sale, at a time and place when to do so might lead to confusion and no such products will be dealt in, in its name, with any other person, firm or corporation handling them for defendant.

V.
Plaintiff's trade-marks and the contract of 1941 being valid and in force, what is their impact on defendant's operations? The question of confusion is not simplified by the authority plaintiff accorded defendant under the 1941 contract to use the name "Cole Laboratories, Inc." This record shows some confusion in use of the name "Cole Laboratories, Inc." The experience with its new St. Louis plant is an illustration. Shall this circumstance, manifestly created by the defendant, but in accord with the contract, deprive plaintiff's marks of any protection?
Our conclusion is prompted partly by the character of products involved and the protection such products demand be accorded the public. We think this consideration and our order in furtherance of it, far outweighs any inconvenience it may cause defendant. The effort of plaintiff to accord protection and avoid confusion and defendant's indifference to these same matters, cannot be avoided in any view we take of the record.
Classification of the products involved by the patent office offers no solution. We are faced with two firms handling products so closely related that the same trade-mark in use on each company's *619 products must lead to confusion. A layman would doubtless put many products in the pharmaceutical and medicinal class that would not be approved by the experts. But even the experts cannot agree. Note these paragraphs from defendant's brief:
"By footnote plaintiff now wants defendant's `Cole', `Colather' and `Genasoap' classified as pharmaceutical preparations because they use `Surgical'. Dr. Schaefer said no. So would Dr. Nelson."
"* * * we take the positive position that disinfectants sold by defendant are classified specifically as janitors' supplies and broadly as chemical compounds, and are not medicinal or pharmaceutical preparations."
"In classifying individual products, Dr. Schaefer relied upon the labeling and the intention of the manufacturer or seller, and stated that the intention of the user has nothing to do with the determination (Schaefer Dep. p. 31)."
"Even though Plaintiff's Exhibits 15 and 17, which are defendant's Pine Disinfectant and Pathocide products, respectively, are very carefully labeled in respect to use, which is as general disinfectants for floors, etc., Dr. Nelson calls the products pharmaceutical preparations."
"Dr. Nelson, plaintiff's expert, disagreed with Dr. Schaefer, Sutherland and Polster in their prosecution of the Cole Registration No. 563,761, with the Patent Office classification of goods, with Sutherland in his cross-examination of Catts, and with Cole's designation of disinfectants as janitor supplies by expressing the opinion that defendant's disinfectants are pharmaceutical preparations because they are germ killing vehicles, as we analyze his definition."
Defendant admits mistake in cataloging or classifying the products handled by it and plaintiff alike. Defendant must be looked upon as a practical expert, at least. Its argument is:
"We do not recall any other `confusion' except in respect to `Hex-O-San', which we pass without comment, in view of the fact that defendant has admitted its honest mistake of initially classifying the product as a soap rather than as a pharmaceutical preparation."
The rights of the public to know whose product they are purchasing is of paramount importance. That confusion has resulted is apparent. That confusion, under the present policies, will occur in the future must be assumed.
Whatever trade value defendant can claim in plaintiff's mark "Cole" has been in the face of plaintiff's wide use of the mark before defendant started either as a partnership or its present corporate structure. Defendant admits plaintiff's use of its mark is such as to have acquired a secondary meaning. (Req. 4)
Plaintiff, being the owner of the trade-marks under Certificates of Trade-Mark Registration, Nos. 274,159 and 563,761, is entitled to an injunction against defendant for the sole and exclusive use of said trade-marks in connection with drugs and other chemicals so closely related thereto, and dealt in by defendant, as to be likely to be mistaken for plaintiff's in connection with their sale and use, and likely to cause confusion or mistake, or to deceive purchasers as to the source of origin of such goods.

VI.
Defendant opened a place of business in St. Louis, Missouri, in July 1952. Commercial chemical preparations are handled in the plant. Plaintiff maintains a laboratory at its place of business in St. Louis. The word "laboratories" is in common use as a part of the trade-name of many of plaintiff's competitors. Plaintiff is frequently referred to as "Cole Laboratories" or "Cole Laboratory", and regularly receives mail *620 so addressed. The name "Cole Laboratories, Inc." is confusingly similar to the name "Cole Chemical Company." Since defendant started its St. Louis plant confusion has occurred on numerous occasions with respect to the delivery of mail, telegrams, merchandise, telephone calls, callers at plaintiff's place of business believing themselves to be at defendant's place, and the commingling of charges in the records of creditors of both parties. Plaintiff has received inquiries for defendant's products and defendant has received inquiries for plaintiff's products. Plaintiff asks that defendant be enjoined from using the name "Cole Laboratories, Inc." in St. Louis, for the foregoing reasons.
By the contract of 1941 plaintiff agreed defendant "shall have the right to continue in business under the name Cole Laboratories, Inc.", subject to exceptions. Plaintiff does not claim the present St. Louis operation is a violation of the exceptions. No geographical limitation was set in the contract on defendant's use of its name. It is fair to assume none were in the minds of the parties. While recognizing the confusion now present, under the contract, resulting from defendant operating under its name in St. Louis it is patently a matter of contract results. To grant the prayer of plaintiff would be a plain reformation of the contract. We are without power to do that on the issues and record.

VII.
Other than Hex-O-San, plaintiff had no knowledge of use of its trade-mark by defendant, prior to institution of this suit. If the record in this case shows the extent of plaintiff's damages, for trade-mark violation, they are small, if any. The record does not suggest a further hearing or reference to a master would serve any useful purpose in that respect.
On the other hand we are not blind to the character of defendant's conduct. It may call for a part of the burden of expenses of this suit that have been imposed on plaintiff to be cast on defendant. Defendant's excuse of error in cataloging Hex-O-San is lame. Its argument that plaintiff should have policed its compliance with its contract is distructive of confidence in the various claims of mistake. Under this record plaintiff made a contract in good faith with defendant. Plaintiff left the scene expecting defendant to abide by its contract. It relied on defendant's good faith and honesty to exercise reasonable care to keep the contract terms. For defendant to employ a sales manager, put him in charge of foreign sales, and not tell him of the contract of 1941 suggests the contract to have been, partly at least, dismissed in defendant's business policy. Admittedly the name "Cole" in plaintiff's business is an old and respected one in the trade. It is a valuable asset. Defendant's conduct lends weight to the view that defendant may have adopted a policy of edging in on the use of plaintiff's mark. One of its defenses is acquiescence. If this be true, Hex-O-San was the last and boldest venture. Plaintiff was alerted. This action followed.
If plaintiff desires to make an effort to show damages or right of judgment for a part of expenses to it of this case, on trade-mark infringement, we will not pre-judge the plea.