575 F.Supp. 210 (1983)
HODGE CHILE CO., Plaintiff,
v.
KNA FOOD DISTRIBUTORS, INC. et al., Defendants.
No. 82-0465C(4).
United States District Court, E.D. Missouri, E.D.
November 21, 1983.
*211 Joseph A. Fenlon, Clayton, Mo., for plaintiff.
Francis L. Ruppert, Clayton, Mo., for defendants.

MEMORANDUM AND ORDER
CAHILL, District Judge.
Plaintiff has moved the Court to reconsider the judgment entered in this case or, in the alternative, to grant the plaintiff a new trial. In its motion, plaintiff raises three principal arguments. First, plaintiff argues that the Court has failed to discern the legal distinction between a trademark and a trade name. Second, plaintiff contends that O.T. Hodge Chile Parlors had no right under the 1954 settlement agreement to transfer the right to use the "Hodge's" name as a trademark to any third party for use in direct competition with plaintiff. Third, plaintiff maintains that even if the 1954 settlement agreement gave O.T. Hodge Chile Parlors such a right, O.T. Hodge Chile Parlors' purported transfer of the trademark right to the defendants was invalid. Because this has been a somewhat complex case and the plaintiff's arguments exhibit a miscomprehension of the Court's judgment, the Court will explain at length its denial of plaintiff's motions to reconsider and for a new trial.

I. A. Trademark v. Trade Name of the 1954 Settlement Agreement.

Plaintiff claims that the O.T. Hodge Chile Parlors used the "Hodge's" name exclusively to identify its restaurant business and, therefore, O.T. Hodge Chile Parlors only has the right to use "Hodge's" as a trade name and not as a trademark to identify its vendable products. Plaintiff also maintains that there was no dispute that plaintiff has the exclusive right to affix the "Hodge's" label to its vendable commodities in Class 46 as a trademark. Further, plaintiff argues that there was no conflict between its use of the "Hodge's" trademark to refer to its chile products on the one hand, and O.T. Hodge Chile Parlors' use of "Hodge's" as a trade name to refer to the services it provided as a chile restaurant on the other. According to the plaintiff, a conflict developed only when strangers to the 1954 settlement agreement unlawfully tried to extend O.T. Hodge Chile Parlors' trade name rights by marketing chile products labeled with the "Hodge's" name in direct competition with plaintiff. This expansion by third parties, plaintiff argues, violated plaintiff's "uncontestable" right to use the "Hodge's" name as a trademark for food products in Class 46 (chile and tamales).
This argument contains two logically necessary premises. First, the argument presupposes that plaintiff has the uncontestable exclusive right to use "Hodge's" as a trademark for products within Class 46, and that this right gives plaintiff the right to exclude defendants from using that trademark for similar products. Second, the argument assumes that although the 1954 settlement agreement gave O.T. Hodge Chile Parlors the exclusive right to use the "Hodge's" name as a trade name, it forbade O.T. Hodge Chile Parlors from using the "Hodge's" name as a trademark to identify the chile products it marketed through its chile restaurants or through grocery stores in direct competition with plaintiff. Both of these premises are false. The Court found, and now clarifies, that the 1954 settlement agreement permitted O.T. Hodge Chile Parlors to use the "Hodge's" name in its business. In 1954 O.T. Hodge Chile Parlors' business included the sale of chile that was prepared by Edmonds Chile Company and that was referred to as "O.T. Hodge Chile Parlor Chile." This chile, identified as O.T. Hodge Chile Parlor Chile, was sold (1) ready to eat for customers to consume on the premises, (2) ready to eat for customers to consume off the premises, and (3) in condensed form to be reconstituted by the customer off the premises. On this point, the Court specifically *212 credits the testimony of Harry Brunsen. O.T. Hodge Chile Parlors' identification of its product as O.T. Hodge Chile Parlor Chile established its common law trademark right to use the "Hodge's" name before 1954, indeed even before plaintiff came into existence. See Wrist-Rocket Manufacturing Co. v. Saunders Archery Co., 516 F.2d 846, 851 (8th Cir. 1975) (Wrist-Rocket I), cert. denied, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975), modified 578 F.2d 727 (8th Cir.1978) Wrist-Rocket II). The fact that O.T. Hodge Chile Parlors did not manufacture the chile it sold does not alter its right to sell the chile manufactured by Edmonds Chile Company under the Hodge's name as a trademark. Id. The 1954 settlement agreement simply reaffirmed O.T. Hodge Chile Parlors' right to use the "Hodge's" name as a trademark to identify the chile it purveyed but which was manufactured by Edmonds Chile Company or anyone else. As such, the 1954 settlement agreement also prevented plaintiff from ever asserting that plaintiff had the exclusive right as against O.T. Hodge Chile Parlors to use the "Hodge's" name to identify chile. See Cole Chemical v. Cole Laboratories, 118 F.Supp. 612, 620 (E.D.Mo.1954) (involving a similar settlement agreement). Thus, the Court ruled that plaintiff is estopped from asserting any such right in the present proceedings against O.T. Hodge Chile Parlors or its licensees. To do otherwise "would undermine the policy of giving deference to the contractual rights of reputable businessmen-users of valuable trademarks.... It appears at best incongruous that a party should be permitted to disaffirm a contract as against public policy when such grounds are the very grounds that the party itself knowingly and willfully helped to create." T & T Manufacturing Co. v. A.T. Cross Co., 587 F.2d 533, 539 & 537-39 (1st Cir.1978). See also Wallpaper Manufacturing, Ltd. v. Crown Wallcovering Corp., 680 F.2d 755, 766 (C.C.P.A. 1982).

B. Defendants' Right to Use the "Hodge's" Name.

Plaintiff has characterized the Court's memorandum opinion as being "written along the theme that the chile parlor had the right to use the name O.T. Hodge's in its restaurant business and that the entry into the retail grocery market was a natural expansion of its business. Plaintiff's contention is that such a theme fails to recognize that it is the defendants who are infringing on plaintiff's trademark, not O.T. Hodge Chile Parlors. Further, plaintiff argues that defendants, as strangers to the 1954 agreement, cannot invoke any rights from that agreement, nor can defendants claim such rights under an assignment from O.T. Hodge Chile Parlors because no valid assignment was made by O.T. Hodge Chile Parlors.
In making this argument, plaintiff relies primarily on the case of Pepsico, Inc. v. The Grapette Company, Inc., 416 F.2d 285 (8th Cir.1969). In Pepsico, the Eighth Circuit held that without a valid assignment of a trademark right, defendant could not assert the defense of laches based on its assignor's uncontested prior use of plaintiff's trademark. The Court ruled that the assignment involved in the Pepsico case was invalid because the assignor transferred no goodwill to the defendant when it purported to assign its trademark rights to the defendant. Without the transfer of goodwill, the established rule is that a purported assignment of a trademark is invalid for purposes of the defense of laches. The plaintiff seeks to draw an analogy between the Pepsico case and the present case. Plaintiff argues that the chile parlor only assigned the right to use the "Hodge's" name to the defendants. Plaintiff further argues that no goodwill was transferred, nor could any goodwill be transferred because the chile parlor remained in business using the same name it had purportedly transferred to the defendants. Hence, plaintiff maintains that the defendants did not and could not acquire from O.T. Hodge Chile Parlors or from the 1954 agreement any right to use the "Hodge's" name as a trademark to identify defendants' chile products. Plaintiff, therefore, contends that defendants' naked use of the chile *213 parlor's name to identify their grocery products, for which the plaintiff alone had the right to use the "Hodge's" name, was an infringement of plaintiff's registered trademark. Again, the major premise on which the plaintiff's argument is based is incorrect.
It must first be emphasized that the Court did not rule, as plaintiff contends, that the 1954 settlement agreement only gave O.T. Hodge Chile Parlors the right to use the "Hodge's" name as a trade name solely to identify its restaurant business, and not as a trademark to identify the chile that O.T. Hodge Chile Parlors may wish to sell in direct competition with the plaintiff. As the Court noted earlier, the 1954 settlement agreement permitted O.T. Hodge Chile Parlors to continue to use the "Hodge's" name as it had been using it in 1954 without interference from plaintiff. In 1954, O.T. Hodge Chile Parlors used the "Hodge's" name to identify the chile it sold as "O.T. Hodge's Chile Parlor Chile." Because the 1954 settlement agreement provided that plaintiff would not interfere with O.T. Hodge Chile Parlor's use of the "Hodge's" name in this way, the settlement agreement also necessarily gave O.T. Hodge Chile Parlors a limited license to use any trademark plaintiff may have had, or would acquire in the "Hodge's" name for products within Class 46. Moreover, nothing in the 1954 settlement agreement forbids O.T. Hodge Chile Parlors from assigning its own common law trademark rights in the name O.T. Hodge's Chile Parlor Chile to anyone. Nor does it bar O.T. Hodge Chile Parlors from assigning the right to be free from plaintiff's interference in marketing O.T. Hodge's Chile Parlor Chile to consumers which is derived from the 1954 agreement itself. Although it may be necessary to transfer goodwill in order for a trademark assignment to be valid, no such requirement applies to the assignment of rights under a settlement agreement. T & T Manufacturing Co., 587 F.2d at 537. The fact that O.T. Hodge Chile Parlors remained in business and continued to sell O.T. Hodge's Chile Parlor Chile after the assignment does not affect the validity of the assignment of its right under the settlement agreement qua settlement contract. Id. Cf. Visa, USA, Inc. v. Birmingham Trust National Bank, 696 F.2d 1371, 1376 (C.A.Fed.1982) (decided under the more stringent standards of a trademark assignment). It must also be remembered that the chile O.T. Hodge Chile Parlors identified as O.T. Hodge's Chile Parlor Chile from 1954 to the present was manufactured by Edmonds Chile Co. The chile the defendants distribute as "O.T. Hodge Chile Parlor Chile" is also manufactured by Edmonds Chile Co. The sales of chile products presently made by the defendants are encompassed within the protections of the 1954 settlement agreement. Therefore, the defendants' rights as assignees of the 1954 settlement agreement equitably estop plaintiff from maintaining this suit against the defendants. See Cole Chemical, 118 F.Supp. 615-620.
Secondly, the Pepsico case is distinguishable from the present case. The defendant in Pepsico relied on the defense of laches based on an assignment of a trademark. Here, the defendants prevail on the defense of estoppel based on the assignment of a contract. Additionally, the defendants' right to use the "Hodge's" name as a trademark, separate from its right to use the name under the 1954 settlement agreement without interference from the plaintiff, is based on a license, not an assignment. The validity of a license is judged under a different standard than is used for an assignment. "The principal requirement, and the only one here critical, is that `the licensing agreement provides for adequate control by the licensor over the quality of goods or services produced under the mark by a licensee... the purpose of such a requirement is to protect the public from being misled.'" Visa, USA, Inc., at 1377. Here, adequate control is provided for. Harry Brunsen, a principal of O.T. Hodge Chile Parlors, Inc., is also a principal of KNA and Edmonds Chile Company. Additionally, the chile that O.T. Hodge Chile Parlors sells is manufactured by the Edmonds Chile Company. The chile sold by *214 defendants is also manufactured by Edmonds Chile Company. Thus, the origin of the chile distributed through the chile parlors and the chile distributed by defendants is the same.
The Court's judgment in this case is grounded on the principles of estoppel. Cases of trademark infringement and unfair competition are equitable actions. As a court of equity, the Court has judged that plaintiff has no superior rights that it may assert against the defendants in this case to the name "Hodge's" in identifying chile products sold in grocery stores. Plaintiff voluntarily entered into the 1954 settlement agreement. That agreement was assignable by O.T. Hodge Chile Parlors. O.T. Hodge Chile Parlors did assign its rights under the 1954 settlement agreement to the defendants. Therefore, plaintiff is equitably estopped from asserting that its rights to the "Hodge's" name to identify chile products are superior to those enjoyed by the defendants.

II. Defendants' Motion to Amend the Court's Judgment.

The defendants have also moved the Court to amend its judgment to include an award of defendants' attorneys fees and costs against the plaintiff. See 15 U.S.C. § 1117 (1976). Attorneys fees and costs are to be awarded in favor of a successful defendant only in exceptional cases in which the plaintiff's cause of action was groundless, unreasonable, vexatious, or was pursued in bad faith. Sanford Research Co. v. Eberhard Faber Pen & Pencil Company, 379 F.2d 512, 516-17 (7th Cir.1967); Scott v. Mego International, Inc., 524 F.Supp. 74, 74-75 (D.Minn.1981). Because plaintiff had a legitimate difference of opinion on the issues relevant to this litigation, the Court finds that plaintiff's prosecution of this suit was not unreasonable, groundless, vexatious, or undertaken in bad faith. Therefore, defendants' request for an award of attorneys fees and costs is denied. Donsco, Inc. v. Casper Corp., 587 F.2d 602, 608 (3d Cir. 1978); John R. Thompson Co. v. Holloway, 366 F.2d 108, 116 (5th Cir.1966).
Accordingly,
IT IS HEREBY ORDERED that plaintiff's motions for reconsideration or, in the alternative, for a new trial are hereby DENIED.
IT IS FURTHER ORDERED that defendants' motion to amend the judgment is DENIED.