# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3866

_____

| | | |
|---|---|---|
| B & B Hardware, Inc., a California Corporation, | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Hargis Industries, Inc., a Texas | * | District Court for the |
| Corporation, d/b/a Sealtite | * | Eastern District of Arkansas. |
| Building Fasteners, d/b/a East Texas | * | |
| Fasteners; East Texas Fasteners, a | * | |
| business entity of form unknown; | * | |
| John Does 1 through 10, inclusive, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 25, 2008
Filed: June 22, 2009

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

B&B Hardware ("B&B") appeals the district court's dismissal, on collateral estoppel grounds, of its trademark infringement action filed against Hargis Industries ("Hargis"). For the reasons explained herein, we reverse the dismissal and remand this matter to the district court for further consideration.

I.

In 1990, B&B began manufacturing and selling a fastener product under the name "Sealtight." This product is largely used in the aerospace industry. Pursuant to a 1990 application, B&B received a certificate of registration for the "Sealtight" mark from the Patent and Trademark Office (PTO) on October 12, 1993. In 1992, Hargis began manufacturing and selling, under the "Sealtite" mark, a line of self-drilling and self-taping screws that are used primarily in the metal building industry.

In July 1996, Hargis filed an application with the PTO to register its "Sealtite" mark, but the PTO refused to grant the registration, citing the likelihood of confusion with B&B's "Sealtight" mark. In March 1997, Hargis sought before the PTO's Trademark Trial and Appeal Board (TTAB) to cancel the registration of B&B's mark. The TTAB initially granted the cancellation request, but later reinstated B&B's registration and stayed the TTAB proceedings pending the outcome of a federal trademark infringement action filed by B&B against Hargis in June 1998 in the United States District Court for the Eastern District of Arkansas. After a four day trial held in May 2000, a jury returned a verdict in favor of Hargis, determining that B&B's "Sealtight" mark was merely descriptive and had not acquired a secondary meaning. A panel of this court affirmed that decision on appeal. B&B Hardware, Inc. v. Hargis Indus., Inc., 252 F.3d 1010 (8th Cir. 2001).

Following the affirmance, Hargis requested that the TTAB resume proceedings regarding Hargis's request for cancellation of B&B's mark. The TTAB permitted Hargis to amend its petition to include as a ground, in accordance with the jury's determination, that B&B's mark was merely descriptive and had not acquired a secondary meaning. In July 2002, the TTAB granted Hargis's motion for summary judgment and canceled the registration of B&B's "Sealtight" mark. The TTAB subsequently reversed itself and held that the motion to amend the petition was

untimely, set aside its grant of summary judgment, and dismissed the cancellation proceeding.

In February 2003, B&B filed an opposition to the Hargis's application to register its "Sealtite" mark. In reply, Hargis argued that the prior federal action, which determined that there was no trademark infringement, should be given preclusive effect by the TTAB. In August 2004, the TTAB rejected this argument, holding that the jury in the federal trademark action had not made any findings concerning the likelihood of confusion. The TTAB also held that Hargis was barred in its attempt to cancel B&B's mark on the basis that B&B's mark was merely descriptive because B&B's mark had been registered for more than five years.

In June 2006, B&B filed an affidavit of incontestability with the TTAB regarding B&B's "Sealtight" mark on the grounds that the mark had been on file for five years without challenge. On September 21, 2006, the PTO issued a Notice of Acknowledgement, recognizing that B&B's "Sealtight" mark had become incontestable. Meanwhile, in August 2006, B&B filed the present action against Hargis, alleging trademark infringement, unfair competition, trademark dilution, and false designation of origin.[1] Hargis sought an order of dismissal on grounds of res judicata and collateral estoppel based upon the 2000 jury verdict. Following a hearing, the district court granted Hargis's motion to dismiss on the basis of collateral estoppel.

In granting the motion to dismiss, the district court recognized B&B's mark had become incontestable and that this status protected the mark from an attack that it is

---

[1]B&B filed this action in the United States District Court for the Central District of California. Over B&B's objections, it was transferred to the United States District Court for the Eastern District of Arkansas. B&B sought retransfer back to the Central District of California, but the motion was denied. The denial of the motion to retransfer has not been raised on appeal.

merely descriptive and without secondary meaning. The district court further recognized that incontestability of a mark addresses one of two elements of a trademark infringement action.[2] The court rejected, however, B&B's argument that receipt of incontestability status after initially losing a trademark infringement action, without more, should prevent the application of collateral estoppel. The district court explained, "B&B cites no authority for the proposition that incontestability makes any difference where a prior judgment otherwise bars a subsequent infringement action." In reaching this outcome, the district court relied upon the Fifth Circuit's decision in Test Masters Educational Services, Inc. v. Singh, 428 F.3d 559 (5th Cir. 2005) (Test Masters), holding that, "[t]he only recognized exception to issue preclusion for trademark infringement is a material change in the trademark's strength over an extended period of time" and that "mere passage of time as a factor [does not] permit[] relitigation of a previously failed claim." The district court held B&B's claims were barred by collateral estoppel, reasoning that "B&B's reliance on the incontestability of its mark as a basis for denying the application of preclusion lacks persuasive authority." The district court concluded that the 2000 jury verdict, which held for Hargis on B&B's prior trademark infringement claim, was entitled to preclusive effect and that application of collateral estoppel was appropriate. The district court granted Hargis's motion to dismiss the complaint.

At the time of the dismissal order, the district court was unaware that the TTAB had sustained B&B's opposition to Hargis's request to register its "Sealtite" mark because of the likelihood of confusion with B&B's "Sealtight" mark. B&B sought

---

[2] To prove a trademark infringement claim, a plaintiff must show that it has a valid, protectible mark and that there is a likelihood of confusion between its mark and the defendant's mark. See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co., 550 F.3d 465, 476 (5th Cir. 2008), petition for cert. filed, 77 U.S.L.W. 3562 (U.S. Mar. 23, 2009). A mark that has received incontestable status "cannot be challenged . . . for mere descriptiveness, or on the basis that the mark lacks secondary meaning." Sunrise Jewelry Mfg. Corp. v. Fred S.A., 175 F.3d 1322, 1324 (Fed. Cir. 1999).

reconsideration of the district court's dismissal order and attached the TTAB ruling to its motion to reconsider. In denying the motion to reconsider, the district court held "the decision of the TTAB is not entitled to preclusive effect . . . and does not create an exception to permit relitigation of trademark infringement." Further, the district court noted that the TTAB decision "was not submitted until after entry of judgment when it could have been brought to the Court's attention before the motion to dismiss was granted."

On appeal, B&B argues the district court erred in granting the motion to dismiss on collateral estoppel grounds. B&B also contends the district court should have given deference to the decisions of the TTAB that (1) B&B's "Sealtight" registration could not be attacked on grounds of descriptiveness because Hargis's challenge was not timely made and (2) the prior district court decision did not address the issue of likelihood of confusion.

II.

"This court reviews de novo the grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007). In conducting this review, we "assume[] as true all factual allegations of the complaint." Id. To survive dismissal, the complaint must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). We also review the applicability of collateral estoppel, a question of law, de novo. Morse v. Comm'r, 419 F.3d 829, 833 (8th Cir. 2005).

The district court determined that B&B's trademark infringement claim was barred by the doctrine of collateral estoppel or issue preclusion.

In the Eighth Circuit, issue preclusion has five elements: "(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment."

Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007) (quoting Anderson v. Genuine Parts Co., 128 F.3d 1267, 1273 (8th Cir. 1997)).

According to B&B, the current action should not be barred by application of the doctrine of collateral estoppel. B&B contends the jury in the prior action did not reach the question of likelihood of confusion because it held instead that B&B's "Sealtight" mark was merely descriptive and had not acquired a secondary meaning. B&B argues, therefore, that the issues raised in this action are not the same as those involved in the prior action; that the question of likelihood of confusion was not actually determined in the prior action; that no valid and final judgment has been entered on the question of likelihood of confusion; and that a decision on the question of likelihood of confusion was not necessary to the prior judgment.

In granting the motion to dismiss on collateral estoppel grounds, the district court found the reasoning of the Fifth Circuit in Test Masters to be "compelling and controlling." In Test Masters, after the Fifth Circuit reversed the district court's denial of defendant's motion for judgment as a matter of law on the issue of secondary meaning, the plaintiff filed a new complaint raising essentially the same claims as the prior complaint. 428 F.3d at 568-69. However, the plaintiff's claims in the second action were based only on the facts surrounding the plaintiff's mark arising since the dismissal of the prior action. Id. The plaintiff sought the opportunity to relitigate the question of whether its mark had obtained a secondary meaning because the new claim involved different operative facts. Id. at 571. The Fifth Circuit rejected this

attempt, holding that "[the plaintiff] ha[d] not alleged a significant intervening factual change . . . that would suggest that there has been a change in the minds of the public" sufficient to result in a different outcome on the issue of whether his mark had obtained a secondary meaning. Id. at 576. As the district court noted, Test Masters rejected "mere passage of time" as the only factor permitting relitigation of a previous claim, requiring instead that a plaintiff demonstrate a "significant intervening factual change."

Test Masters does not address the question of how a change in the validity of a mark from contestable to incontestable should impact the application of collateral estoppel. The court in Test Masters stated, "[t]he determination of whether a mark has secondary meaning depends on dynamic factual scenarios that will necessarily vary from case to case. The thrust of our holding is that [the plaintiff] has not alleged in his pleadings any significant intervening factual change." Id. at 575. "Because he has not alleged a significant intervening factual change, we find that our previous holding [that the mark had not acquired a secondary meaning] bars [the plaintiff's] current claim." Id. at 576. Here, we are not concerned with the mere passage of time. Instead, we are faced with a question of whether a change in a mark's validity from contestable to incontestable bars application of collateral estoppel. We hold that this constitutes a significant intervening factual change, and, therefore, application of collateral estoppel is inappropriate.

In considering the requirements for applying collateral estoppel, there is no disagreement that the parties involved in the prior litigation and this action are identical. The question turns on whether the issue litigated *and decided* in the prior action is the same as the issue presented in this action. See Robinette, 476 F.3d at 589.

To prove a trademark infringement claim, a plaintiff must show that it has a valid, protectible mark and that there is a likelihood of confusion between its mark and

the defendant's mark. See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co., 550 F.3d 465, 474 (5th Cir. 2008) ("To prevail on their trademark infringement claim, the plaintiffs must show two things. First, they must establish ownership in a legally protectible mark, and second, they must show infringement by demonstrating a likelihood of confusion."), petition for cert. filed, 77 U.S.L.W. 3562 (U.S. Mar. 23, 2009). To demonstrate that the mark is valid and protectible, a plaintiff must establish, in the case of a descriptive mark, that its mark has acquired a secondary meaning. A plaintiff does so by showing that through "long and exclusive use in the sale of the user's goods, the mark has become so associated in the public mind with such goods that the mark serves to identify the source of the goods and to distinguish them from those of others." Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 870 (8th Cir.1994) (citing Co-Rect Prods., Inc. v. Marvy! Adver. Photography, Inc., 780 F.2d 1324, 1330 (8th Cir. 1985)). A court, in determining whether a likelihood of confusion exists, considers: "(1) the strength of the trademark; (2) the similarity between the plaintiff's and defendant's marks; (3) the competitive proximity of the parties' products; (4) the alleged infringer's intent to confuse the public; (5) evidence of any actual confusion; and (6) the degree of care reasonably expected of the plaintiff's potential customers." Anheuser-Busch, Inc. v. Balducci Publ'ns, 28 F.3d 769, 774 (8th Cir. 1994) (citing SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1987)). Because a plaintiff is required to prove different elements in establishing a descriptive mark's validity than in proving likelihood of confusion, these are distinct issues for purposes of applying collateral estoppel.

Hargis does not dispute that B&B's "Sealtight" mark is now incontestable. See 15 U.S.C. § 1065 (after five years of continuous use, owner of registered trademark may obtain incontestable status by filing affidavit that certain statutory requirements have been met). Once a mark becomes incontestable, it "cannot be challenged . . . for mere descriptiveness, or on the basis that the mark lacks secondary meaning." Sunrise Jewelry Mfg. Corp. v. Fred S.A., 175 F.3d 1322, 1324 (Fed. Cir. 1999); accord Park

'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 205 (1985) (holding that an alleged infringer may not argue that an incontestable mark is merely descriptive).

In the prior action, the jury determined only that B&B's mark was descriptive and had not obtained a secondary meaning. With this determination, there was no need to address the second element of a trademark infringement claim–whether there was a likelihood of confusion between the two marks. While the issue of likelihood of confusion may have been involved and litigated in the prior action, it was not finally decided or essential to the prior judgment. According to the court's directions, the jury was instructed as follows: "If you found that the term "Sealtight" was merely descriptive in Interrogatory No. 1 and had not acquired secondary meaning prior to January 1, 1992, in Interrogatory Nos. 2 and 3, your duties are completed and you need not proceed any further." The jury did not reach the subsequent interrogatories that addressed likelihood of confusion and whether there was actual confusion. Accordingly, it is not appropriate to apply collateral estoppel to the current trademark infringement action because the jury in the prior litigation never determined the likelihood of confusion issue, a different and distinct issue from whether the mark was valid and protectible.

Hargis's reliance on Federal Rule of Civil Procedure 49, an argument raised for the first time in this appeal, is misplaced. Rule 49(a)(3) states:

> ***Issues Not Submitted.*** A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

Fed. R. Civ. P. 49(a)(3). Hargis argues that, because B&B did not demand that the jury address the issue of likelihood of confusion or object to the conditional

instruction on the verdict form, we are required to read the lack of an answer to be consistent with the jury's determination that there is no trademark infringement. Under this argument, Hargis would have us read the lack of an answer to be a determination by the jury that there was no likelihood of confusion. This reading of Rule 49(a)(3) is wholly without merit.[3] Here the question of likelihood of confusion was presented to the jury and would have resulted in a determination by the jury had resolution of the issue been necessary for a final judgment. As it was not necessary, the jury did not address it. Rule 49(a)(3)'s waiver provision, which applies where the issue is not submitted to the jury, is not applicable in this situation.

Finally, in light of our decision to reverse the district court, we decline to address B&B's argument that the district court should have given preclusive effect to the decisions of the TTAB. B&B requests that we give preclusive effect to two decisions made by the TTAB: first, that B&B's "Sealtight" registration could not be attacked on grounds of descriptiveness because Hargis's challenge was not timely made and, second, TTAB's finding that the prior district court decision did not address the issue of likelihood of confusion.[4] It is unnecessary, in view of our

---

[3]The cases cited by Hargis to support this argument are distinguishable because the cases involve situations where the issue was never presented to a jury. In AG Systems, Inc. v. United Decorative Plastics Corp., the plaintiff failed to make a demand, as contemplated by Rule 49(a)(3), that the issue be submitted to the jury, and thus the plaintiff waived the right to raise the omission as error on appeal. 55 F.3d 970, 973-74 (4th Cir. 1995). In Fredonia Broadcasting Corp. v. RCA Corp., the defendant failed to raise an objection to a question the district court erroneously omitted, however the failure to object resulted in a waiver on appeal and the district court was deemed to have decided the question in accordance with the judgment. 481 F.2d 781, 796 (5th Cir. 1973).

[4]It is clear that B&B intends to assert that the TTAB's determination made in 2007 that there is a likelihood of confusion between the two marks should be given preclusive effect by the district court on the claim of trademark infringement. B&B acknowledges, however, that such argument "may best be saved for another day."

conclusion that application of collateral estoppel based on the 2000 jury verdict is inappropriate, to address whether the district court should have given deference to the decisions of the TTAB.

## III.

Accordingly, we reverse the district court's grant of dismissal and remand this matter for further proceedings.

_____