# United States Court of Appeals

## For the Eighth Circuit

_____

No. 10-3137

_____

B & B Hardware, Inc., a California Corporation

*Plaintiff - Appellant*

v.

Hargis Industries, Inc., a Texas Corporation, doing business as Sealtite Building Fasteners, doing business as East Texas Fasteners; East Texas Fasteners, a business entity of form unknown; John Does, 1 through 10, inclusive

*Defendants - Appellees*

_____

No. 11-1247

_____

B & B Hardware, Inc., a California Corporation

*Plaintiff - Appellant*

v.

Hargis Industries, Inc., a Texas Corporation, doing business as Sealtite Building Fasteners, doing business as East Texas Fasteners; East Texas Fasteners, a business entity of form unknown; John Does, 1 through 10, inclusive

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

Submitted: April 17, 2012
Filed: May 1, 2013

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

SHEPHERD, Circuit Judge.

Following our prior remand, B&B Hardware, Inc. v. Hargis Industries, Inc., 569 F.3d 383 (8th Cir. 2009), the district court conducted a seven-day jury trial on B&B Hardware's ("B&B") claim of trademark infringement and unfair competition and on Hargis Industries' ("Hargis") counterclaims of false advertising and false designation of origin. The jury returned a verdict which rejected B&B's claims but found in favor of Hargis on its counterclaims. After the district court entered judgment on the jury's verdict, it awarded attorney fees and costs to Hargis. B&B now appeals, arguing that the district court should have given preclusive effect to the Trademark Trial and Appeal Board's ("TTAB") findings concerning the likelihood of confusion of the two companies' trademarks. B&B also appeals the award of attorney fees and costs. We affirm the decision of the district court except as to attorney fees. On the matter of attorney fees, we remand for recalculation of those fees.

I.

A more thorough review of the factual background of this case can be found in our prior decisions concerning these parties. B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis II), 569 F.3d 383 (8th Cir. 2009); B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis I), 252 F.3d 1010 (8th Cir. 2001). It is sufficient here to recall that B&B

manufactures and sells a fastener product under the name "Sealtight" that is used predominantly in the aerospace industry, whereas Hargis manufactures a line of self-drilling and self-taping screws that are commonly used in the construction of metal buildings under the "Sealtite" mark. For over 15 years, these parties have been locked in litigation over these similar marks.

Upon remand, and as predicted, B&B sought "to assert that the TTAB's determination made in 2007 that there is a likelihood of confusion between the two marks should be given preclusive effect by the district court on the claim of trademark infringement." Hargis II, 569 F.3d at 390 n.4. In 2007, the TTAB denied Hargis's attempt to register its "Sealtite" mark, concluding that there was a likelihood of confusion with B&B's "Sealtight" mark. The district court rejected B&B's claim that the TTAB decision should be given preclusive effect on the question of likelihood of confusion. The district court held that because the TTAB is not an Article III court, our prior decision in Flavor Corp. of America v. Kemin Industries, Inc., 493 F.2d 275 (8th Cir. 1974), does not require that the court give preclusive effect to the TTAB's decision. The district court further rejected B&B's attempt to admit the TTAB decision into evidence, concluding that to do so would be confusing and misleading to the jury.

The jury returned a verdict fully in favor of Hargis, finding that there was no likelihood of confusion between the two marks. Thus, the jury rejected B&B's claims of trademark infringement and unfair competition. Hargis prevailed on its claims of false advertising and false designation of origin. The district court entered judgment based on the jury's verdict and denied B&B's motion for judgment as a matter of law and for a new trial. The district court then granted Hargis's motion for attorney fees, holding that B&B's conduct of willfully and deliberately manufacturing evidence to support its trademark infringement claim make this an exceptional case where the award of attorney fees is appropriate under the Lanham Act.

-3-

B&B brings this appeal. It argues: (1) the district court erred in failing to instruct the jury to give preclusive effect to the TTAB's decision that there was a likelihood of confusion between the two marks; (2) even if the TTAB's decision was not preclusive, the district court abused its discretion in not giving the TTAB's fact-findings deference or admitting the TTAB's decision into evidence; and (3) the district court erred in concluding that the award of fees was warranted under the Lanham Act. We consider each of these claims in turn.

II.

In 2007, the TTAB denied Hargis's application for registration, determining that there was a likelihood of confusion between the two marks. B&B's primary argument in this appeal is that, under this court's decision in Flavor Corp., the TTAB's decision concluding there is a likelihood of confusion between the Sealtight and Sealtite marks deserves preclusive effect on that question, which necessarily requires entry of judgment in favor of B&B on its trademark infringement claim. As this issue raises a question of law as to whether the application of collateral estoppel is appropriate, we review the question de novo. See Morse v. Comm'r, 419 F.3d 829, 833 (8th Cir. 2005).

In Flavor Corp., we addressed whether the defendant, Kemin Industries, was collaterally estopped from challenging the likelihood of confusion determination of the Court of Customs and Patent Appeals ("CCPA"). Under the facts of that case, the TTAB determined that, due to the phonetically similar marks used by Flavor Corporation and Kemin Industries, there was reasonable likelihood of confusion. Kemin appealed this decision to the CCPA, which then affirmed the TTAB's determination. When the trademark infringement action was filed, the district court determined that the CCPA's decision on the question of likelihood of confusion collaterally estopped Kemin from challenging that decision in the trademark infringement action.

-4-

We affirmed on appeal, holding, "[W]here the CCPA has found a likelihood of confusion between two similar marks in a cancellation proceeding, that fact is precluded from relitigation in a subsequent infringement action between the same parties under the doctrine of collateral estoppel." Flavor Corp., 493 F.2d at 281. B&B argues that this holding compels this court to conclude that the district court erred when it refused to give preclusive effect to the findings of the TTAB. This is incorrect.

As the district court pointed out below, before we could apply collateral estoppel in Flavor Corp., we had to confirm "that some question or fact in dispute ha[d] been judicially and finally determined by a court of competent jurisdiction between the same parties or their privies." Flavor Corp., 493 F.2d at 279 (quotation omitted).[1] We then noted that the Seventh Circuit had declined in John Morrell & Co. v. Doyle, 97 F.2d 232 (7th Cir. 1938), to give CCPA determinations preclusive effect in subsequent infringement actions "because the CCPA was not an Article III court," but rather it "was merely an administrative arm of the Patent Office." Flavor Corp., 493 F.2d at 280. We did not need to follow the Doyle decision, however, because subsequent to that decision in 1948, Congress made the CCPA an Article III court.[2] Because the CCPA had obtained the status of an Article III court at the time it issued

_____

[1]This holding in Flavor Corp. was immediately beset with criticism by commentators and at least one other circuit. See, e.g., Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366, 375-76 (7th Cir. 1976) (superceded on other grounds by statute) (citing critical commentary); see also 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:101 (4th ed. 2012) (citing Flavor Corp. when explaining, "Sometimes, the courts have overlooked these obvious differences [between the proof for likelihood of confusion for purposes of an opposition or cancellation and for purposes of trademark infringement] and focused only on the result of an inter partes case, ignoring the limited evidentiary basis on which the judgment was reached.").

[2]The CCPA was the predecessor to the United States Court of Appeals for the Federal Circuit.

its decision, we determined that its likelihood of confusion determination was entitled to issue preclusion. The TTAB is not an Article III court, and thus Flavor Corp. did not reach and is not persuasive on the question before this panel—whether the TTAB's likelihood of confusion determination is entitled to preclusive effect.

> Some courts will treat Trademark Board decisions as administrative judgments which carry full preclusive effect as to adjudicated facts, if these are the same facts which are in issue in the later court proceeding. Other courts will not give such judgments preclusive effect, but will give them some weight. Still other courts will recognize such judgments unless the contrary is established with thorough conviction.

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:96 (4th ed. 2012).

Principles of administrative law suggest that application of collateral estoppel may be appropriate where administrative agencies are acting in a judicial capacity. See Univ. of Tenn. v. Elliott, 478 U.S. 788, 791 (1986) (citing United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)) ("We have previously recognized that it is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity."). Assuming TTAB decisions may be entitled to preclusive effect, such application is not appropriate here because, as discussed below, the same likelihood-of-confusion issues were not decided by the TTAB as those brought in the action before the district court. When considering whether the application of issue preclusion is appropriate, we look at five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the

determination in the prior action must have been essential to the prior judgment.

Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007) (quoting Anderson v. Genuine Parts Co., Inc., 128 F.3d 1267, 1273 (8th Cir. 1997)). The element at issue in this case is the second one—whether the issue sought to be precluded is the same as the issue involved in the prior action. It was not here, and thus the district court properly declined to apply issue preclusion in these circumstances.

The Second Circuit recognized that "[i]ssues that may bear the same label are nonetheless not identical if the standards governing them are significantly different." Jim Beam Brands Co. v. Beamish & Crawford Ltd., 937 F.2d 729, 734 (2d Cir. 1991). Accordingly, "the issue of likelihood of confusion in a cancellation proceeding may be different from the issue of likelihood of confusion in an action for infringement." Id. The Second Circuit adopted the rule from the McCarthy treatise that before preclusive effect is given to a TTAB decision, the decision "must be carefully examined to determine exactly what was decided and on what evidentiary basis." Id. (quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:31 (2d. ed. 1984)).

The simple fact that the TTAB addressed the concept of "likelihood of confusion" when dealing with Hargis's attempt to register its mark does not necessarily equate to a determination of "likelihood of confusion" for purposes of trademark infringement. In reaching its determination, the TTAB used only 6 of the 13 factors from In re E.I. DuPont DeNemours & Co., 476 F.2d 1357, 1361 (CCPA 1973): (1) the fame of B&B's Sealtight mark; (2) the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression; (3) the similarity or dissimilarity and nature of the goods; (4) the similarity or dissimilarity of established, likely-to-continue trade channels; (5) the degree of consumer care in purchasing; and (6) instances of actual confusion. The

TTAB found the similarities in the appearance of the marks and the fact that both marks are assigned to fasteners supported a finding of likelihood of confusion. However, the TTAB also determined that the specific fasteners are significantly different products and are marketed to different industries and customers, and that those findings would not support a finding of likelihood of confusion. Despite the latter finding, the TTAB determined that, for registration purposes, the similarities of the marks trumped the market usage of the products in its likelihood-of-confusion analysis.

When considering the question of likelihood of confusion for purposes of trademark infringement, in this Circuit, courts apply the six-factor test from SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980). SquirtCo lists the following as factors to consider in assessing the likelihood of confusion: (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase. Id. Although some of the E. I. DuPont factors are the same or comparable to the SquirtCo factors, "for collateral estoppel to apply, the [TTAB] must have examined the 'entire marketplace context'" as is done in trademark infringement actions. See 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:101 (4th ed. 2012) (citing Levy v. Kosher Overseers Ass'n of Am., Inc., 104 F.3d 38, 43 (2d Cir. 1997)).

The TTAB found that the evidence of marketplace context—that the types of fasteners are different and marketed to vastly different industries and customers—weighed against a finding of likelihood of confusion. Despite this conclusion, the TTAB placed greater emphasis on the appearance and sound when spoken of the two marks and ultimately determined that there was a likelihood of confusion. While this approach may be appropriate when determining issues of

-8-

registration, it ignores a critical determination of trademark infringement, that being the marketplace usage of the marks and products. See Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1054 (8th Cir. 2005) ("[O]ur comparison of the similarity between marks and products [for trademark infringement] must occur in a context that recognizes how consumers encounter the products and how carefully consumers are likely to scrutinize the marks."). Accordingly, application of issue preclusion in this case is not appropriate, as the TTAB in denying registration did not decide the same likelihood-of-confusion issues presented to the district court in this infringement action.

Further, "[f]ailure of one party to carry the burden of persuasion on an issue should not establish the issue in favor of an adversary who otherwise would have the burden of persuasion on that issue in a later litigation." 18 Wright, Miller, and Cooper, Federal Practice and Procedure § 4422, at p. 59 (2d ed. 2002); see Lane v. Sullivan, 900 F.2d 1247, 1251-53 (8th Cir.), cert. denied, 498 U.S. 847 (1990); Steelmet, Inc. v. Caribe Towing Corp., 747 F.2d 689, 693-94 (11th Cir. 1984). Thus, the fact that Hargis was unable to overcome B&B's challenge to the registration of Hargis's mark on the basis of likelihood of confusion does not establish that B&B can meet its burden of persuasion for trademark infringement purposes. As the district court found, the products, other than having similar names and both being fasteners, were not similarly priced, similarly marketed, or intended to be used in conjunction with or in substitution for one another. The district court properly refused to apply collateral estoppel to the TTAB's decision.

### III.

B&B next argues that the district court should have given deference to the TTAB's findings regarding likelihood of confusion or allowed those findings to be admitted into evidence so that the jury could have considered them.

First, B&B argues that the TTAB decision concerning registration of a trademark is entitled to deference in this trademark infringement action. B&B relies upon one case—Noah's, Inc. v. Nark, Inc., 560 F.Supp. 1253 (E.D. Mo. 1983)—to support its argument that deference is appropriate. In Noah's, Inc., the court held as part of its review of the TTAB's registration decision that "the decision of the [TTAB] must be accepted as controlling on issues of fact unless the contrary is established by testimony which in character and amount carries th[o]rough conviction." Id. at 1258 (quotation omitted). As the district court pointed out, the Noah's, Inc. holding was limited to the circumstances of that case—where a party brings a civil action pursuant to 15 U.S.C. § 1071(b) challenging the TTAB's decision regarding registration of a trademark. Here, no one is contesting the TTAB's decision to deny Hargis's registration of its mark under section 1071(b). Accordingly, we reject B&B's argument that the TTAB's factual findings from a trademark registration case are entitled to deference by the district court.

Next, we consider whether the district court abused its discretion when it refused to admit the TTAB's decision into evidence in this case. "Determinations as to the admissibility of evidence lie within the sound discretion of the district court, and we review those determinations under an abuse of discretion standard . . . ." Brunsting v. Lutsen Mtns. Corp., 601 F.3d 813, 818 (8th Cir. 2010). Under Federal Rule of Evidence 403, the district court retains discretion to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, the district court determined that admission of the TTAB's decision "would be highly confusing and misleading to the jury." (Order at 7.) The court noted that the jury and the TTAB do not use identical factors to determine likelihood of confusion and that "the TTAB applies its factors and analyzes the evidence in a manner significantly different than the jury is required to do in an infringement

-10-

action." (Id.) Further, the district court held that the TTAB's findings would be unfairly prejudicial to both Hargis and B&B.

We agree with the district court's analysis and add that over the seven-day trial, the jury was presented with evidence regarding likelihood of confusion as it pertains to the factors under which the jury decided the claim of trademark infringement. Much of that factual evidence was also presented to the TTAB in the registration action, and thus the probative value of the TTAB's ultimate conclusion is minimal. Accordingly, we hold that the district court did not abuse its discretion in excluding the TTAB's decision from the evidence presented to the jury.

IV.

Last, we address B&B's appeal of the award of attorney fees under the Lanham Act. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "When a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional," and the district court is justified in awarding attorney fees to a defendant. Scott Fetzer Co. v. Williamson, 101 F.3d 549, 555 (8th Cir. 1996). Our review of a decision to award attorney fees is for an abuse of discretion. Id.

The district court determined that B&B's claim of trademark infringement met this standard after seven days of testimony. The district court focused on the fact that B&B went to great lengths to manufacture evidence in support of its claim, such as creating a false website developed with images from Hargis's website, contacting long-time Hargis customers to create confusion with those customers, and making misrepresentations at trial and in B&B owner Larry Bogatz's deposition testimony. In light of these findings, which B&B does not contest, we cannot find an abuse of discretion in the award of attorney fees to Hargis, as these actions demonstrate B&B's claim of trademark infringement is groundless and unreasonable.

-11-

However, because the prior appeal brought by B&B resulted in a ruling in its favor, we do not agree with the district court's determination that it was also groundless and unreasonable. Accordingly, we remand this matter to the district court with directions to amend the award of attorney fees by deducting from the award Hargis's attorney fees for the prior appeal.

V.

We affirm the district court's denial of B&B's motion for judgment as a matter of law or alternative motion for a new trial based on its claim of issue preclusion. We also affirm the district court's evidentiary decisions. We remand the district court's award of attorney fees with directions to amend the award by deducting Hargis's attorney fees for the prior appeal.

COLLOTON, Circuit Judge, dissenting.

I reach a different conclusion on the question of collateral estoppel that is raised in this case. Because the Trademark Trial and Appeal Board previously decided the same question about likelihood of confusion that was at issue in the trial of this case, Hargis Industries should not have been permitted to relitigate that point. I would therefore vacate the judgment of the district court and remand for further proceedings.

In 2007, the Trademark Board denied Hargis's application to register the mark SEALTITE, concluding that there was a likelihood of confusion between the proposed mark and B&B Hardware's mark SEALTIGHT. After considering all of the facts in evidence that were relevant to the factors bearing on the likelihood-of-confusion issue, *see In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973), the Trademark Board determined that the most critical factors in the

-12-

analysis of this case were the similarities of the marks and the similarity of the goods. The Board found that the marks are substantially identical and are used on closely related products. The Board also thought that anecdotal evidence of actual confusion lent support to its finding that when the two products are marketed under similar marks, consumers mistakenly believe that they came from the same source. The Board thus found that Hargis's mark SEALTITE so resembled B&B's mark SEALTIGHT as to be likely to cause confusion. Hargis did not seek judicial review of the Trademark Board's decision.

One issue presented to the jury in this case was whether Hargis used the trademark SEALTITE in a manner that was likely to cause confusion among customers or potential customers as to the source of B&B's products. B&B argued that Hargis was collaterally estopped from relitigating that question, because the Trademark Board already decided the point in B&B's favor. The district court disagreed, concluding that while a finding of an Article III court such as the Court of Custom and Patent Appeals may have bound the parties in a subsequent action, *see Flavor Corp. of Am. v. Kemin Indus., Inc.*, 493 F.2d 275, 277-81 (8th Cir. 1974), a decision by the Trademark Board, an administrative agency, did not have that effect.

Although this court in *Flavor Corp.* noted and distinguished an old Seventh Circuit decision holding that determinations made by an administrative arm of the Patent Office were not entitled to collateral estoppel effect, *see John Morrell & Co. v. Doyle*, 97 F.2d 232 (7th Cir. 1938), the Supreme Court more recently emphasized that "giving preclusive effect to administrative factfinding serves the value underlying general principles of collateral estoppel: enforcing repose." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 (1986). Therefore, "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Id.* at 797-98 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). There is

good reason to apply this general proposition to decisions of the Trademark Board. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 250-56 (3d Cir. 2006) (applying collateral estoppel to a decision of the Trademark Board on likelihood of confusion). As the leading treatise in the field observes:

> [T]he courts have generally been too ready to deny preclusive status to findings of the Trademark Board. The volume of federal court litigation has become too pressing not to make use of the doctrine of collateral estoppel when the setting calls for it. The Trademark Board's function "is to determine whether there is a right to secure or to maintain a registration." If in the course of doing so factual issues are decided there is no policy reason why those factual questions should not be foreclosed from further re-litigation in court as long as the issues in the two cases are indeed identical and the other rules of collateral estoppel are carefully observed.

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:99 (4th ed. 2013) (footnote omitted). For these reasons, I respectfully disagree with the district court's apparent conclusion that collateral estoppel is inapplicable because the Trademark Board is an administrative body.

The majority does not adopt the district court's rationale, but nonetheless affirms the district court's ruling on the alternative ground that the Trademark Board "did not decide the same likelihood-of-confusion issues presented to the district court in this infringement action." *Ante*, at 9. One basis for this conclusion appears to be that the six factors considered by the Trademark Board in its analysis are not exactly the same as the six factors listed by this court for assessing likelihood of confusion in *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). Modest differences in analytical approach to the same ultimate issue, however, do not justify dispensing with collateral estoppel, just as variations in analysis among the circuits about a legal issue does not mean that one circuit's decision lacks preclusive effect in another. *See, e.g.*, *Georgia-Pacific Consumer Prods. v. Four-U*, 701 F.3d 1093,

-14-

1101 (6th Cir. 2012) (applying issue preclusion based on an Eighth Circuit decision that used six factors to determine likelihood of confusion, even though the Sixth Circuit applies eight factors, including two that are unique); *Blumcraft of Pittsburgh v. Kawneer Co., Inc.*, 482 F.2d 542, 548 (5th Cir. 1973) (discussing *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971)).

The majority also concludes that the Trademark Board weighed the factors bearing on likelihood of confusion differently than the majority thinks they should be weighed in an infringement action. *Ante*, at 8-9. This is tantamount to holding that a finding of the Trademark Board on likelihood of confusion will *never* be preclusive in an infringement action, because the majority believes that the balancing of factors that is appropriate in a registration or cancellation action is not appropriate in an infringement action. In reaching its decision on likelihood of confusion, the Trademark Board compared the marks in their entire marketplace context, discussing the companies' goods in relation to the fastener industry, the companies' channels of distribution, and the behavior of consumers in the market for the companies' products. Where, as here, "the Trademark Board has indeed compared conflicting marks in their *entire marketplace context*, the factual basis for the likelihood of confusion issue is the same, the issues are the same, and collateral estoppel is appropriate." *Levy v. Kosher Overseers Ass'n of Am., Inc.*, 104 F.3d 38, 42 (2d Cir. 1997) (quoting 4 McCarthy, *supra*, § 32:31 (3d ed. 1996)); *see also* 6 McCarthy, *supra*, § 32:101 (4th ed. 2013); *Flavor Corp.*, 493 F.2d at 280 ("Since the fact of likelihood of confusion is singularly determinative in a cancellation proceeding and that fact is likewise one of the essential elements in an infringement action, the identity of issue requirement is met."). That this court might disagree with the balance struck by the Trademark Board in a particular case is not reason to deny its decision preclusive effect. "The doctrines of claim and issue preclusion prevent relitigation of wrong decisions just as much as right ones. Otherwise, the doctrines would have no effect and be useless." *Clark v. Clark*, 984 F.2d 272, 273 (8th Cir. 1993).

The majority also mentions that Hargis bore the burden of persuasion in the registration action before the Trademark Board, but that B&B had the burden as a plaintiff in this infringement action. *Ante*, at 9. This court has recognized, however, that differences in the burden of persuasion counsel against application of collateral estoppel only when the difference in burden affects who should prevail. *Lane v. Sullivan*, 900 F.2d 1247, 1251 (8th Cir. 1990) (citing Restatement (Second) of Judgments § 28(4), cmt. f (1982)). The opinion of the Trademark Board in this case demonstrates that the burden of persuasion was not material to the decision. The burden is mentioned only once, in the last sentence of the opinion: "To the extent that any doubts might exist as to the correctness of our likelihood of confusion analysis, especially considering the prior determination that opposer's mark is merely descriptive and has not acquired secondary meaning, we resolve such doubts against applicant." Before this observation, the Trademark Board *already had completed its likelihood-of-confusion analysis* and found that "applicant's mark SEALTITE . . . so resembles opposer's mark SEALTIGHT . . . as to be likely to cause confusion." The final sentence—beginning with "*[t]o the extent that* any doubts *might exist*"—is an alternative holding based on an uncertain contingency. It does not undermine the preclusive effect of the Trademark Board's determination that confusion is likely.

For these reasons, I would vacate the judgment of the district court and remand for further proceedings with instructions to give preclusive effect to the decision of the Trademark Board on likelihood of confusion.

———————————————————

-16-