# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1570

_____

B&B Hardware, Inc., a California Corporation

*Plaintiff - Appellant*

v.

Hargis Industries, Inc., a Texas Corporation, doing business as East Texas
Fasteners, doing business as Sealtite Building Fasteners

*Defendant - Appellee*

East Texas Fasteners, a business entity of form unknown; Does, 1 through 10, inclusive

*Defendant*s

_____

No. 17-1755

_____

B&B Hardware, Inc., a California Corporation

*Plaintiff - Appellee*

v.

Hargis Industries, Inc., a Texas Corporation, doing business as East Texas
Fasteners, doing business as Sealtite Building Fasteners

*Defendant - Appellant*

East Texas Fasteners, a business entity of form unknown; Does, 1 through 10, inclusive

*Defendant*s

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: September 26, 2018
Filed: December 21, 2018
_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

B&B Hardware, Inc. appeals the district court's[1] judgment in favor of Hargis Industries, Inc. on B&B's claim of trademark infringement and request for an accounting of profits. Hargis cross-appeals from the district court's denial of its motion for fees and costs. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons set forth in this opinion, we affirm on all claims.

I.

Although we relate the circumstances underlying this case in great detail in our prior opinions concerning these parties, B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis V), 716 F.3d 1020 (8th Cir. 2013); B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis III), 569 F.3d 383 (8th Cir. 2009); B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis I), 252 F.3d 1010 (8th Cir. 2001), Justice Alito has succinctly summarized the factual origins of this case and provides apt commentary:

_____

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

Petitioner B & B and respondent Hargis both manufacture metal fasteners. B & B manufactures fasteners for the aerospace industry, while Hargis manufactures fasteners for use in the construction trade. Although there are obvious differences between space shuttles and A-frame buildings, both aerospace and construction engineers prefer fasteners that seal things tightly. Accordingly, both B & B and Hargis want their wares associated with tight seals. A feud of nearly two decades has sprung from this seemingly commonplace set of facts.

In 1993 B & B registered SEALTIGHT for "threaded or unthreaded metal fasteners and other related hardwar[e]; namely, self-sealing nuts, bolts, screws, rivets and washers, all having a captive o-ring, for use in the aerospace industry." In 1996, Hargis sought to register SEALTITE for "self-piercing and self-drilling metal screws for use in the manufacture of metal and post-frame buildings." B & B opposed Hargis' registration because, although the two companies sell different products, it believes that SEALTITE is confusingly similar to SEALTIGHT.

The twists and turns in the SEALTIGHT versus SEALTITE controversy are labyrinthine. The question whether either of these marks should be registered, and if so, which one, has bounced around within the [Patent and Trademark Office] for about two decades; related infringement litigation has been before the Eighth Circuit three times; and two separate juries have been empaneled and returned verdicts. The full story could fill a long, unhappy book.

B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis VI), 135 S. Ct. 1293, 1301 (2015) (first alteration in original) (citations omitted).

In B&B's trademark infringement action against Hargis in May 2000, a jury found that B&B's "Sealtight" mark was not entitled to protection because it lacked secondary meaning. We affirmed. Hargis I, 252 F.3d at 1011. In June 2006, B&B filed for incontestability status for its trademark with the Patent and Trademark Office (PTO). The PTO issued a Notice of Acknowledgment in September 2006, concluding that B&B's affidavit of incontestability met the statutory requirements. Incontestability provided B&B with a presumption that its "Sealtight" mark carried

secondary meaning. This constituted a significant intervening factual change from the 2000 jury trial, which resulted in the finding that "Sealtight" was merely descriptive, and B&B could thus escape the collateral estoppel bar that the 2000 jury verdict imposed on the issue of secondary meaning. See Hargis III, 569 F.3d at 388.

Immediately after its 2006 filing for incontestability, B&B brought suit against Hargis again for trademark infringement, unfair competition, trademark dilution, and false designation of origin. The case currently before us arises out of this second suit. However, only the period between June 2006, when B&B overcame collateral estoppel by filing for incontestability, see Dist. Ct. Dkt. 422; see also Hargis III, 569 F.3d at 388-89, and October 2013, when B&B allowed its trademark registration to expire and therefore no longer had statutory rights in that trademark, is at issue here.

The district court initially dismissed B&B's new suit on collateral estoppel grounds. B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis II), No. 4:06CV01654 SWW, 2007 WL 2711647, at *12-13 (E.D. Ark. Sept. 13, 2007). B&B appealed and this Court reversed and remanded, finding that incontestability was a significant factual change precluding application of collateral estoppel. Hargis III, 569 F.3d at 389-90. The district court then conducted a jury trial and the jury found against B&B on all claims. B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis IV), 736 F. Supp. 2d 1212, 1214 (E.D. Ark. 2010). B&B again appealed to this Court, which upheld the jury's verdict. Hargis V, 716 F.3d at 1022. B&B then appealed to the Supreme Court of the United States, which found that the district court should have given preclusive effect to a decision of the Trademark Trial and Appeal Board (TTAB) finding that there was a likelihood of confusion between "Sealtight" and "Sealtite." Hargis VI, 135 S. Ct. at 1299. The Supreme Court remanded the case for further proceedings.

We subsequently vacated the district court's judgment and remanded. B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis VII), 800 F.3d 427, 427 (8th Cir. 2015) (per curiam). Following our remand, the case proceeded in the district court on

-4-

B&B's claim that Hargis committed trademark infringement under the Lanham Act, false designation of origin, and unfair competition. B&B sought disgorgement of Hargis's profits beginning in June 2006. Hargis counterclaimed for false advertising and false designation of origin. A five-day jury trial ensued.

At trial, Hargis argued that B&B obtained its incontestability status through fraud, presenting evidence that B&B failed to inform the PTO about the 2000 jury verdict that B&B's "Sealtight" mark was merely descriptive. Hargis also presented evidence that all of its profits stemmed from its personal relationships with its customers, exemplary customer service, and the quality of its products, rather than the "Sealtite" name.

At the close of evidence, B&B moved for judgment as a matter of law on Hargis's counterclaims but failed to do so on its own claims. The jury found that Hargis infringed on B&B's trademark but did not do so willfully, awarded B&B none of Hargis's profits, and found for Hargis on its counterclaims and its affirmative defense of fraud. Based on the jury's fraud finding, the district court found that "Sealtight" was not entitled to incontestability status, and that B&B therefore had not pled an intervening change in circumstances allowing it to relitigate claims raised in the 2000 jury trial. The district court therefore entered judgment for Hargis on all claims.

In determining that B&B was not entitled to any of Hargis's profits, the district court recognized that, under 15 U.S.C. § 1117(a), it retained discretion to reduce or increase the jury's profit award or to award profits itself. See Masters v. UHS of Del., Inc., 631 F.3d 464, 474-75 (8th Cir. 2011). Rather than basing its ruling solely on the jury's refusal to award profits, it treated that refusal as advisory, considering it together with the six factors used by the Third, Fourth, and Fifth Circuits in balancing the equities. See, e.g., Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 175 (4th Cir. 2006). The district court concluded that, because B&B did not lose sales, Hargis did not represent that its products were B&B's products, and Hargis's infringement was

not willful, it would be inequitable to award B&B any of Hargis's profits. It therefore refused to disgorge Hargis of its profits.

Hargis then filed a motion seeking attorneys' fees, nontaxable litigation costs, and an injunction as sanctions against B&B. The district court awarded Hargis taxable litigation costs but otherwise denied Hargis's motion, finding that protracted litigation, on its own, does not make a case an exceptional case justifying fee-shifting under the Lanham Act.

B&B appeals to this Court, arguing (1) the jury verdict finding fraud and a lack of willfulness was clearly erroneous; and (2) the district court abused its discretion in refusing to disgorge Hargis of its profits. On cross-appeal, Hargis argues that the district court abused its discretion in denying Hargis's motion for fees and costs.

II.

B&B challenges the jury's fraud finding, arguing that the verdict was not supported by sufficient evidence. Because B&B failed to file a Rule 50(b) motion as to the sufficiency of the evidence at the close of evidence, "our review is strictly limited. We cannot test the sufficiency of the evidence to support the jury's verdict beyond application of the 'plain error' doctrine in order to prevent a manifest miscarriage of justice." Karjala v. Johns-Manville Prods. Corp., 523 F.2d 155, 157 (8th Cir. 1975) (citations omitted); see also Pulla v. Amoco Oil Co., 72 F.3d 648, 655 (8th Cir. 1995). "Under this standard we can only grant [B&B] relief if [we find error that] would result in a miscarriage of justice if left uncorrected." Fin. Holding Corp. v. Garnac Grain Co., 965 F.2d 591, 595 (8th Cir. 1992) (internal quotation marks omitted) (quoting United States v. Schmidt, 922 F.2d 1365, 1369 (8th Cir. 1991)). We find no such plain error in the jury's verdict.

Under Section 15 of the Lanham Act, Pub. L. No. 79-489, § 15, 60 Stat. 427, 433-34 (1946) (codified as amended at 15 U.S.C. § 1065), a registrant of a valid

trademark who has continually utilized that trademark for five years after registration may have his mark declared incontestable. Incontestability provides "conclusive evidence of the validity of [a] registered mark . . . and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). In order to obtain incontestability, an applicant must file an affidavit with the PTO declaring that "there has been no final decision adverse to [his] claim of ownership of such mark . . . or to [his] right to register the same or to keep the same on the register . . . ." 15 U.S.C. § 1065(1), (3). At least one circuit treats a district court's finding of mere descriptiveness at summary judgment as such an adverse decision. See OBX-Stock, Inc. v. Bicast, Inc., 558 F.3d 334, 342-43 (4th Cir. 2009). Failure to disclose an adverse decision is critical because "the PTO does not examine the merits of a § 15 affidavit, which is entered into PTO records 'without regard to its substantive sufficiency' as long as it is received at the proper time and lacks facial inconsistencies or omissions." Gutier v. Hugo Boss Trade Mark Mgmt. GmbH & Co. KG, 555 F. App'x 947, 949 (Fed. Cir. 2014) (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19:140 (4th ed. 2013)).

Complying with the Lanham Act's affidavit requirement is especially important because a defendant accused of infringing an incontestable trademark may raise an affirmative defense that "the registration or the incontestable right to use the mark was obtained fraudulently." 15 U.S.C. § 1115(b)(1). "[T]he words 'obtained fraudulently' comprehend not only the initial securance of a registration, but also the maintenance thereof, i.e., the securance of continuing rights of registration, by fraud." Crown Wallcovering Corp. v. Wall Paper Mfrs. Ltd., 188 U.S.P.Q. (BNA) 141, at *3-4 (T.T.A.B. 1975) ("[T]he filing of a fraudulent Section 15 affidavit would enable a registrant to obtain a new right, namely, incontestability, to which he would not otherwise be entitled . . . ."). Fraud on the PTO consists of willfully withholding material information that, if disclosed, would result in an unfavorable outcome. Id. at *2. We define "material information" in this context as "information that a reasonable examiner would have considered important" when making her decision. Gilbert/Robinson, Inc. v. Carrie Beverage-Mo., Inc., 989 F.2d 985, 992 (8th Cir.

1993) (applying the Federal Circuit's patent materiality definition to the trademark context), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 124-25 (2014).

It is undisputed that B&B failed to inform the PTO of the 2000 jury verdict finding the "Sealtight" trademark merely descriptive. B&B raises two arguments defending its failure to disclose. It argues first that the 2000 verdict was not a final adverse decision. However, in its August 28, 2007 decision refusing to register Hargis's "Sealtite" mark, the TTAB, a separate division of the PTO from that which handles incontestability affidavits, explicitly stated that the 2000 jury verdict was an adverse decision that extinguished B&B's common-law rights in the "Sealtight" name. B&B Hardware, Inc. v. Sealtite Bldg. Fasteners, Opp. No. 91155687 to App. No. 75129229, 2007 WL 2698310, at *6 (T.T.A.B. Aug. 28, 2007). We therefore conclude that the district court did not plainly err in finding that the 2000 jury verdict was a prior adverse decision.

B&B next argues that its failure to disclose was not willful because it did not realize the jury verdict was a final adverse decision and it did not disclose that verdict based on the advice of counsel. B&B's owner so testified at trial. However, the jury was entitled to disbelieve him if it chose. See Willis v. State Farm Fire & Cas. Co., 219 F.3d 715, 720 (8th Cir. 2000) ("[A] jury is free to disbelieve any witness, even if the testimony is uncontradicted or unimpeached."). Thus, we cannot say that the district court plainly erred in finding that B&B acted willfully.

Because we find no plain error in the district court's determination that B&B willfully failed to disclose a prior adverse decision, it follows that the district court did not err in its determination that B&B committed fraud on the PTO and that Hargis was therefore entitled to the affirmative defense of fraud under 15 U.S.C. § 1115(b)(1).

## III.

We turn now to the district court's conclusion that B&B's claims were barred by collateral estoppel. Finding that B&B failed to present evidence of any significant intervening factual change from the date of the 2000 jury verdict, we affirm.

We review the District Court's legal conclusions regarding preclusion de novo, Knutson v. City of Fargo, 600 F.3d 992, 995 (8th Cir. 2010), and may affirm on any basis in the record. Wycoff v. Menke, 773 F.2d 983, 986 (8th Cir. 1985). There are two types of preclusion—claim preclusion, or res judicata, and issue preclusion, or collateral estoppel. See Knutson, 600 F.3d at 995. Claim preclusion "provides that 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" Klipsch, Inc. v. WWR Tech., Inc., 127 F.3d 729, 733 (8th Cir. 1997) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). Collateral estoppel generally provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Hargis VI, 135 S. Ct. at 1303 (alteration in original) (quoting Restatement (Second) of Judgments § 27, at 250 (1980)); see also Knutson, 600 F.3d at 996. Collateral estoppel, in the Eighth Circuit, has five elements:

> (1) the party sought to be precluded in the second suit was a party . . . in the prior suit; (2) the issue sought to be precluded is the same as the issue involved in the prior action; (3) the issue was actually litigated in the prior action; (4) the issue was determined by a valid and final judgment; and (5) the determination in the prior action was essential to the judgment.

Morse v. Comm'r of Internal Revenue Serv., 419 F.3d 829, 834 (8th Cir. 2005) (internal quotation marks omitted).

-9-

In Hargis III, we identified incontestability as "a significant intervening factual change" precluding application of collateral estoppel. 569 F.3d at 388. In other words, obtaining incontestability allowed B&B to escape the preclusive effects of the 2000 jury's finding that "Sealtight" lacked secondary meaning. Secondary meaning is part of validity; a descriptive trademark that lacks secondary meaning is not protectible. Schwan's IP, LLC v. Kraft Pizza Co., 460 F.3d 971, 974 (8th Cir. 2006) (stating that a descriptive mark is only protectible if it is "so associated with the product that it becomes a designation of the source rather than of a characteristic of the product"—thus, if it has acquired secondary meaning). However, incontestability entitles a trademark owner to a presumption that "it has a valid, protectible mark and there is a likelihood of confusion between its mark and the defendant's mark." Id. at 389. Thus, when B&B obtained incontestability for "Sealtight," its factual circumstances changed because, unlike at the 2000 trial, it could rely on a presumption that "Sealtight" carried a secondary meaning.

Once Hargis proved its affirmative defense of fraud in this case, B&B lost the benefits of incontestability, including the presumption of validity. See 15 U.S.C. § 1115(b); Hargis III, 569 F.3d at 389. The district court found that, without incontestability, B&B was in the same situation as it was at the 2000 jury trial because it failed to plead *any other* intervening change in transactional facts. See Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 572-75 (5th Cir. 2005) ("In [a prior case], the critical issue before the court was whether [plaintiff's] trademark had acquired secondary meaning. In the present case, [plaintiff] is requesting protection against unfair competition, infringement, and false and deceptive advertising, based on his central argument that his . . . mark has now acquired secondary meaning. The issues of law in both cases are incontrovertibly identical . . . ." (footnote omitted)); see also id. at 575 ("The thrust of our holding is that [plaintiff] has not alleged in his pleadings any significant intervening factual change."). Therefore, the district court held that collateral estoppel mandated judgment for Hargis. See B&B Hardware, Inc. v. Hargis Indus., Inc. (Hargis VIII), No. 4:06-CV-01654 BSM, 2017 WL 957548, at *4-5 (E.D. Ark. Feb. 16, 2017).

B&B's sole argument against preclusion on appeal is that the 2000 district court lacked subject matter jurisdiction to determine whether "Sealtight" had secondary meaning. It claims that the Lanham Act prevents any review of descriptiveness after the mark has become incontestable. However, it fails to acknowledge that its mark was not incontestable in 2000. It also points out that no governmental body attempted to cancel the "Sealtight" mark's registration after the 2000 trial, but it cites no authority implying that this failure indicates the 2000 district court lacked subject matter jurisdiction.

In any event, we find that the 2000 district court had jurisdiction to consider the issue of secondary meaning. B&B does not dispute that, under 28 U.S.C. § 1331, the 2000 court had jurisdiction over its trademark infringement claim, which arose under 15 U.S.C. § 1114. Given this unrefuted fact, B&B offers nothing to support its claim that the district court lacked subject matter jurisdiction in that proceeding, and we therefore reject its contention.

We further agree with the district court that, without incontestability, B&B is collaterally estopped from pursuing its claims. There is no dispute that B&B was a party to the 2000 litigation. In Hargis III, we explicitly noted that the 2000 jury verdict considered secondary meaning—the same issue in question here. 569 F.3d at 389. We also noted that the 2000 district court's decision—a valid and final judgment—hinged solely on the jury's finding that the "Sealtight" mark had no secondary meaning. Id. We thus found there that the elements of collateral estoppel were satisfied as to the issue of secondary meaning, and we again so conclude.

There, however, we refused to apply collateral estoppel because B&B had shown an intervening factual change—incontestability—that allowed it to overcome issue preclusion on secondary meaning. Id. at 388. There, we referenced with approval the Fifth Circuit's decision in Test Masters Educational Services v. Singh, which concluded that issue preclusion depends not on the passage of time but on whether the plaintiff alleges "an intervening factual change" in its pleadings. 428

-11-

F.3d at 575; Hargis III, 569 F.3d at 388. Here, other than incontestability and the passage of time, B&B has failed to allege *any* intervening factual change that would allow it to escape the application of collateral estoppel. Absent any evidence that B&B's mark has developed secondary meaning since the 2000 trial, we decline to allow B&B to relitigate that issue. We thus uphold the district court's application of collateral estoppel.

## IV.

Because disgorgement under the Lanham Act requires that a plaintiff establish that the defendant has violated its trademark rights, see 15 U.S.C. § 1117(a), and because we have concluded that the district court did not err in finding that B&B's trademark infringement claims are barred by collateral estoppel, the district court made no error in declining to order disgorgement of Hargis's profits.

## V.

In its cross-appeal, Hargis argues the district court improperly denied its motion for fees and costs. "We review the district court's decision on whether to award attorney's fees under an abuse-of-discretion standard." Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1013 (8th Cir. 2011).

Prevailing trademark defendants only receive fees and costs in exceptional cases. 15 U.S.C. § 1117(a). "An exceptional case is one in which a plaintiff brought an action that 'was groundless, unreasonable, vexatious, or was pursued in bad faith.'" Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 123 (8th Cir. 1987) (quoting Hodge Chile Co. v. KNA Food Distribs., Inc., 575 F. Supp. 210, 214 (E.D. Mo. 1983)); see also Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc., 908 F.3d 313, 346 (8th Cir. 2018) ("[W]e hold that the district court did not abuse its discretion in finding that SMRI's case was not 'exceptional' with respect to either the 'substantive

-12-

strength of [its] litigating position' or 'the unreasonable manner in which the case was litigated.'" (second alteration in original) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014))). This case does not present an example of groundless, unreasonable, or vexatious litigation, as it has arguable merit on both sides—evidenced by the fact that both parties have prevailed at various times throughout its 12-year history. We cannot say that B&B pursued litigation in bad faith, as it received a favorable Supreme Court ruling and reasonably believed it could prevail. Therefore, the district court did not abuse its discretion in finding this an unexceptional case, and we affirm its denial of Hargis's motion for attorney fees and nontaxable litigation costs.

The judgment of the district court is affirmed.

_____