**SUNRISE JEWELRY MFG.
CORP., Appellant,**

v.

**FRED S.A., Appellee.**

No. 98–1022.

United States Court of Appeals,
Federal Circuit.

April 16, 1999.

Jai Ho Rho, Loeb & Loeb LLP, of Los Angeles, California, argued for appellant. Of counsel were Janice Anne Sharp and Albert F. Davis, Merchant & Gould, of Los Angeles, California.

Arthur Schwartz, Foley & Lardner, of Washington, DC, argued for appellee. With him on the brief was Cameron C. Powell.

Before PLAGER, BRYSON, and GAJARSA, Circuit Judges.

PLAGER, Circuit Judge.

Sunrise Jewelry Manufacturing Corp. ("Sunrise") petitioned the U.S. Patent and Trademark Office ("PTO") to cancel Fred S.A.'s ("Fred") registration of a "metallic nautical rope design" for clocks, watches, and jewelry. The Trademark Trial and Appeal Board ("TTAB" or "Board") dismissed the petition. *See Sunrise Jewelry Mfg. Corp. v. Fred S.A.,* Cancellation No. 25,312 (Trademark Trial & Appeal Bd. July 24, 1997). The TTAB found that Sunrise's pleadings of fraud were legally insufficient. We affirm that determination. The TTAB further determined that Fred's trademark could not be challenged as generic due to its incontestable status. Because we conclude that the registration of an incontestable mark that is a product design may be cancelled if the mark is generic, we vacate the decision of the TTAB on this ground and remand the case

for the Board to determine if Fred's mark is generic.

## BACKGROUND

On February 27, 1990, Fred received federal registration, Reg. No. 1,584,554, for a "metallic nautical rope design as an integral feature of the goods," which include clocks, watches, and jewelry made of precious metal. Subsequently, in March 1993, Al–Or International ("Al–Or") and Philippe Charriol International ("Charriol") filed suit in district court for a declaratory judgment that Al–Or and Charriol had not infringed Fred's trademark in jewelry. Correspondingly, Al–Or and Charriol filed a petition at the PTO to cancel Fred's federal registration of the mark. The TTAB suspended the cancellation proceeding due to the pendency of the district court action.

Fred, Al–Or, and Charriol reached a settlement agreement on December 9, 1994, resolving the declaratory judgment action and the cancellation proceeding. The parties filed a stipulation for dismissal of the litigation, which was entered on April 19, 1995. Also, in April 1995, the same parties, in an unrelated action, filed a complaint against a number of defendants in district court alleging infringement of Fred's mark.

The cancellation proceeding was withdrawn on May 8, 1995; the PTO acknowledged the dismissal of the proceeding on June 25, 1995. On the same date the withdrawal was filed, Fred began the process of claiming incontestability status for its mark by filing a Declaration of Use and Incontestability under section 15 of the Lanham Act, 15 U.S.C. § 1065 (1994). In the declaration, Fred's general manager stated that there were no proceedings involving the right to register the mark pending and not disposed of either in the PTO or in the courts. The declaration mentioned the settlement and noted that a withdrawal of the cancellation proceeding had been filed on May 8, 1995. The PTO acknowledged the § 15 declaration on

March 18, 1996. In the interim, however, the defendants in the trademark infringement action initiated by Fred, Al–Or, and Charriol in April 1995, answered the complaint and included a counterclaim challenging the validity of Fred's mark.

This suit began on June 5, 1995, when Sunrise filed a petition for cancellation of Fred's registration. Sunrise filed a second amended petition for cancellation on October 29, 1996, alleging that Fred's statements in its incontestability declaration to the PTO were fraudulent, and that the mark was generic. The TTAB granted Fred's motions to dismiss Sunrise's petition. *See Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, Cancellation No. 25,312 (Trademark Trial & Appeal Bd. July 24, 1997).

The Board concluded that Fred had made no false statements to the PTO and that the mark could not be challenged as generic. With regard to the claim of fraud, the TTAB noted that at the time the declaration was filed no challenge to the validity of the registration had been raised in the pending trademark infringement suit. Although such a challenge was made subsequently, the Lanham Act does not impose a continuing duty to keep the PTO informed of subsequent developments affecting a registrant's rights in its mark. *See id.*, slip op. at 13. The TTAB also held that Fred's mark, as a product design/configuration, could not serve as a name for Fred's goods. *See id.*, slip op. at 8. Thus, Fred's mark could not be challenged for being generic because the registration for an incontestable mark can only be cancelled if the "registered mark becomes the *generic name* for the goods," 15 U.S.C. § 1064(3) (1994) (emphasis added).

Sunrise appealed the dismissal with prejudice of its petition to cancel Fred's registration. We have jurisdiction to hear this appeal under 28 U.S.C. § 1295 (1994).

## DISCUSSION

■ Whether the TTAB properly granted Fred's motion to dismiss is a question of law that we review independently. *See Highland Falls–Fort Montgomery Central School Dist. v. United States*, 48 F.3d 1166, 1170 (Fed.Cir.1995). On review, the non-movant's allegations are accepted as true and all reasonable inferences are drawn in Sunrise's favor. *See id.* at 1169–70.

### A.

■ As an initial matter, we summarize the pertinent aspects of an incontestable registered mark such as Fred's. Incontestable status is "conclusive evidence of the validity of the registered mark." 15 U.S.C. § 1115(b) (1994). Once a mark gains incontestable status, its registration can only be challenged on the grounds stated in § 14 of the Lanham Act, 15 U.S.C. § 1064, such as, "if the registered mark becomes the generic name for the goods or services, ... has been abandoned, ... or its registration was obtained fraudulently." 15 U.S.C. § 1064(3) (1994). Otherwise, an incontestable mark cannot be challenged, for example, for mere descriptiveness, or on the basis that the mark lacks secondary meaning. *See Park 'N Fly, Inc. v. Dollar Park & Fly*, 469 U.S. 189, 196, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

Incontestable status is attained by filing a § 15 affidavit with the Commissioner within one year after a five-year period in which the federally registered mark has been in continuous use and is still in use in commerce. *See* 15 U.S.C. § 1065(3) (1994); 37 C.F.R. § 2.167. An applicant must declare that: (1) there has been "no final decision adverse to ... registrant's right to register the [mark] or to keep the same on the register," and (2) there is "no proceeding involving said rights pending in the Patent or Trademark Office or in a court and not finally disposed of." *See* 37 C.F.R. § 2.167(d), (e); *see also* U.S. Department of Commerce, Patent & Trademark Office, *The Trademark Manual of Examining Procedure* § 1604.03, at 1600–11 (2d ed.1993) [hereinafter *TMEP* ]. Sec-

tion 1065(4) specifically states that "no incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered."

### B.

■ On appeal, Sunrise alleges that the TTAB erred in its interpretation of the cancellation provision (§ 14) of the Lanham Act, 15 U.S.C. § 1064(3). Section 1064(3) lists the circumstances under which the registration of an incontestable mark may be cancelled, including "[a]t any time if the registered mark becomes the generic name for the goods or services, ... for which it is registered...." The TTAB reasoned that Fred's mark could not be a "generic name" and thus Fred's registration was not subject to cancellation under this section of the Lanham Act because a product configuration is incapable of serving as a *name* for Fred's goods. *See Sunrise Jewelry Mfg. Corp.*, Cancellation No. 25,312, slip op. at 8.

■ In support of the TTAB position, Fred urges that the plain meaning of "generic name" in § 1064(3) excludes trade dress, such as product design or configuration.[1] We are not so confident that this is the proper interpretation because of the anomaly such a reading would create. If we read "generic name" in this fashion, then an incontestable trade dress would receive more protection than a word mark under the Lanham Act because only registration of the latter could be cancelled if the mark were found generic. Thus, before we can adopt the TTAB's reading of "generic name," we must consider whether such a reading is consistent with the purpose behind the Lanham Act.

The Lanham Act provides national protection of trademarks in order for owners of marks to secure the goodwill of their businesses and in order to protect the ability of consumers to distinguish among competing producers. *See* S.Rep. No. 79-1333, at 3, 5 (1946). To this end, the Lanham Act defines the term "trademark" to include "any word, name, symbol, or device, or any combination thereof – (1) used by a person, ... to identify and distinguish his or her goods, ... and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127 (1994). The Supreme Court has likewise reiterated that "[i]t is the source-distinguishing ability of a mark – not its ontological status as color, shape, fragrance, word, or sign – that permits it to serve these basic purposes [of identifying and distinguishing the goods to indicate source]." *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995).

■ By definition, something that is generic cannot serve as a trademark because it cannot function as an indication of source. *See In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1569, 4 USPQ2d 1141, 1142 (Fed.Cir.1987). In *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), the Supreme Court explained that "[a] generic term is one that refers to the genus of which the particular product is a species.... Generic terms are not registerable, and a registered mark may be canceled at any time on the grounds that it has become generic." *See id.* at 194, 105 S.Ct. 658. The Court emphasized several times throughout its opinion that the registration of an incontestable mark that becomes generic may be

---

1. The terms "trade dress," "product design," and "product configuration," seem to be used in different manners in the case law. For purposes of this opinion, we adopt the Supreme Court's implied view that "trade dress" includes both product design and configuration. *See Two Pesos, Inc. v. Taco Caba-* *na, Inc.*, 505 U.S. 763, 772, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (using "trade dress" to describe "a verbal or symbolic mark or the features of a product design" that may be registered under § 2 of the Lanham Act, 15 U.S.C. § 1052).

cancelled at any time. *See id.* at 195, 197, 201, 202, 105 S.Ct. 658.

Our review of the Lanham Act and relevant case law persuades us that the term "generic name" as used in 15 U.S.C. § 1064(3), must be read expansively to encompass anything that has the potential but fails to serve as an indicator of source, such as names, words, symbols, devices, or trade dress. Any narrower interpretation of "generic name" would allow incontestable trademarks other than names that become generic to retain incontestable status despite their inability to serve as source designators. This would directly contravene the purpose of the Lanham Act. *Cf. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (finding no persuasive reason to apply different analysis to trademarks and trade dress under § 43 of the Lanham Act because the protection of both serves the same statutory purpose).

Fred cites cases from the Second and Third Circuits in support of its contention that the doctrine of "genericness" is inapplicable to product configuration marks. *See, e.g., Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 32 USPQ2d 1724 (3d Cir.1994) (holding that the trademark distinctiveness categories are inapplicable to product configurations because a product's configuration cannot be said to be suggestive or descriptive of the product, or arbitrary or fanciful in relation to it); *see also Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 36 USPQ2d 1737 (2d Cir.1995). Fred misreads these opinions; nothing in these opinions supports the concept that a product configuration cannot be generic. In *Duraco*, the Third Circuit set out its own test to determine if a product configuration could be protected under the provisions of the Lanham Act. *See* 40 F.3d at 1434, 32 USPQ2d at 1725. The key factor in the Third Circuit's test is if the product configuration is "likely to serve primarily as a designator of origin of the product." *See id.*, 40 F.3d 1431, 32 USPQ2d at 1725; *accord Knit-*

*waves*, 71 F.3d at 1008, 36 USPQ2d at 1746–47. This approach is consistent with our conclusion that a trade dress that cannot serve as an indicator of source is generic and unprotectable.

More recently, the Second Circuit clarified its approach to determining distinctiveness of trade dress. In *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1000–01, 42 USPQ2d 1348, 1353–54 (2d Cir.1997), the Second Circuit explained that product configurations were analyzed differently than product packaging. More importantly for purposes of this case, the Second Circuit emphasized that "[a] generic trade dress receives no Lanham Act protection." *Id.* at 1000, 111 F.3d 993, 42 USPQ2d at 1353 (including trade dress that "consists of the shape of a product that conforms to a well-established industry custom"); *see also BellSouth Corp. v. DataNational Corp.*, 60 F.3d 1565, 1570–71, 35 USPQ2d 1554, 1557–58 (Fed.Cir. 1995) (affirming denial of registration for "walking fingers" logo for telephone directory services as generic because it could no longer be understood to represent a source but identified the product generally); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541, 48 USPQ2d 1065, 1074 (5th Cir. 1998) (noting that a golf hole's trade dress may be generic if it connotes golf holes in general); *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1048–49, 47 USPQ2d 1332, 1336–37 (9th Cir.1998) (holding that grape-leaf designs have become generic emblems for wine and thus, are unprotectable as trademarks). The corollary to this conclusion is that the registration of a trade dress which is generic may be cancelled.

Consequently, we hold that the TTAB's construction of "generic name" is too limited and thwarts congressional intent to prevent exclusive use of a mark that identifies a class of goods rather than products made by a single source. In this case, a consumer could associate the registered "metallic nautical rope design" with the genus of clocks, watches, and jewelry made of pre-

cious metal which feature a metallic nautical rope design rather than with Fred's specific line of products. On remand, the TTAB should determine if Fred's mark is incapable of source designation; if so, it is generic and Fred's registration may be cancelled, despite its incontestable status.

### C.

 A petition to cancel the registration of an incontestable mark may also be filed if the registration was "obtained fraudulently." 15 U.S.C. § 1064(3) (1994). On appeal, Sunrise contends that Fred's registration should be cancelled because Fred made misrepresentations to the PTO in its declaration to obtain incontestable status for the mark. At the time that Fred filed its § 15 affidavit for incontestability, it declared that there was "no proceeding involving the rights pending and not disposed of either in the Patent and Trademark Office or in the courts" and informed the PTO that a withdrawal of Al–Or and Charriol's petition for cancellation had been filed. Sunrise argues that Fred's declaration was untrue because at the time the declaration was filed the cancellation proceedings had not been terminated, and because the validity of Fred's registration became contested before the PTO accepted Fred's affidavit.

We agree with the TTAB's holding that Sunrise's pleadings of fraud are legally insufficient. First, the TTAB correctly reasoned that Fred made no false statement in its notification to the PTO of the existence and withdrawal of the Al–Or and Charriol petition for cancellation since at the time Fred filed the affidavit it would have been reasonable to believe that no proceeding was pending in view of the previously filed withdrawal of the cancellation proceeding.

Second, the TTAB did not err in concluding that Fred made no false declaration in claiming that no proceeding involving rights in the mark was pending. At the time Fred filed the § 15 affidavit, Al–Or and Charriol had asserted Fred's mark in a trademark infringement suit, but the counterclaim challenging the validity of Fred's registration had not yet been filed. The PTO's own rule states that "[a] proceeding involving the mark in which the registrant is the plaintiff, and there is no counterclaim involving the registrant's rights in the mark, does not preclude acceptance of a § 15 affidavit." *TMEP* § 1604.03, at 1600–11. Furthermore, the Lanham Act imposes no continuing duty to update a § 15 affidavit. *See TMEP* § 1604, at 1600–11. As a result, Sunrise's arguments fail to justify overturning the TTAB's decision on this ground.

### CONCLUSION

For the above reasons, we affirm the TTAB's dismissal of the fraud claim, but we vacate the TTAB's dismissal of Sunrise's petition to cancel Fred's registration on the basis that the mark is generic and remand the case to the Board for determination of whether Fred's mark is generic, consistent with this opinion.

### COSTS

Parties shall bear their own costs.

*AFFIRMED–IN–PART, VACATED–IN–PART & REMANDED.*