# United States Court of Appeals for the Federal Circuit

---

**IN RE: PT MEDISAFE TECHNOLOGIES,**
*Appellant*

---

2023-1573

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 88083209.

---

Decided: April 29, 2025

---

PERRY R. CLARK, Law Offices of Perry R. Clark, Palo Alto, CA, argued for appellant.

CHRISTINA J. HIEBER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Coke Morgan Stewart. Also represented by ERICA JEUNG DICKEY, ROBERT JAMES LAVACHE, AMY J. NELSON.

---

Before PROST, CLEVENGER, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

PT Medisafe Technologies ("Medisafe") appeals from a decision of the United States Patent and Trademark Office's ("PTO") Trademark Trial and Appeal Board ("Board") denying registration of its proposed mark. Because the

Board applied the correct test for determining whether a color mark is generic, and substantial evidence supports the Board's determination that Medisafe's proposed mark is generic, we affirm.

I

Medisafe, a medical glove manufacturer and distributor, applied to the PTO for registration of a color mark for use on medical examination gloves. The operative amended version of Medisafe's application describes the proposed mark as "the color dark green (Pantone 3285 c) as applied to the entire surface of the goods which consist of chloroprene examination gloves." J.A. 247. The application included a drawing of the mark, reproduced below (the broken line shows the positioning of the mark but is not part of it), and was accompanied by a specimen, also shown below:

 

J.A. 252-53.

Upon review of Medisafe's initial application, the PTO's examining attorney found that the dark green color was not inherently distinctive, so the proposed mark could not be placed on the principal or supplemental register

without a showing that it had acquired distinctiveness.[1] Medisafe attempted to make such a showing by providing the examiner with a declaration from Medisafe's Executive Vice President and promotional literature. At the examiner's request, Medisafe also submitted "[c]olor photographs and color advertisements showing competitive goods in [its] industry." J.A. 99. After reviewing these materials, the examining attorney determined that Medisafe's proposed color mark was generic and had not acquired distinctiveness with respect to Medisafe's goods.[2]

Medisafe responded to this rejection by trying again to prove that its mark had acquired distinctiveness, including by submitting additional declarations. The examining attorney remained unpersuaded and issued a final decision, finding Medisafe's proposed mark was generic, that Medisafe had failed to prove acquired distinctiveness, and the mark could not be placed on the principal register. The examining attorney further refused Medisafe's alternative request to register its mark on the supplemental register. J.A. 498 (finding mark generic and "thus incapable of distinguishing applicant's goods"); *see also* J.A. 620.

In determining that Medisafe's color mark was generic, the examining attorney relied on the two-step test we originally set forth in *H. Marvin Ginn Corp. v. International*

---

[1]    Trademarks used in commerce may be placed on the principal register under 15 U.S.C. § 1051(a)(1). Marks "capable of distinguishing [the] applicant's goods or services and not registrable on the principal register" may be placed on the supplemental register under 15 U.S.C. § 1091(a). *See Matal v. Tam*, 582 U.S. 218, 224-25 (2017).

[2]    "[A] 'generic' term names a 'class' of good or services, rather than any particular feature or exemplification of the class." *United States PTO v. Booking.com B.V.*, 591 U.S. 549, 556 (2020).

*Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 990 (Fed. Cir. 1986): "First, what is the genus of goods or services at issue? Second, is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?" J.A. 274; *see also* J.A. 206.

Medisafe appealed to the Board. In evaluating the examining attorney's genericness determination, the Board applied a "slight variation" of our *Marvin Ginn* test, tailoring the analysis to color marks. J.A. 4-5. This modified test had first been set out in the Board's precedential decision in *Milwaukee Electric Tool Corp. v. Freud America, Inc.*, 2019 WL 6522400 (T.T.A.B. Dec. 2, 2019). *Milwaukee* states:

> We further believe it is appropriate to apply a two-step inquiry to determine genericness of a single color similar to the inquiry we would apply to word marks and other kinds of trade dress, where we [(i)] first consider the genus of goods or services at issue, and [(ii)] second consider whether the color sought to be registered or retained on the register is understood by the relevant public primarily as a category or type of trade dress for that genus of goods or services. . . . Accordingly, we will identify the appropriate genus of goods and then determine whether the color . . . is so common within the relevant genus that consumers would primarily associate it with the genus rather than as indicating a unique source of goods within the genus.

*Id.* at *9.

Applying the *Milwaukee* test, the Board rejected Medisafe's proposed genus, which would have consisted of only gloves sold to authorized resellers, and instead defined

the applicable genus as all "chloroprene medical examination gloves." J.A. 8. At the second step, the Board agreed with the examining attorney that the relevant public includes "all such people or businesses who do or may purchase chloroprene medical examination gloves." J.A. 12.

Considering the entire record, the Board then agreed with the examining attorney that Medisafe's color mark is generic because it "is so common in the chloroprene medical examination glove industry that it cannot identify a single source." J.A. 45. The Board pointed to, for example, screenshots of websites selling, under third-party marks, "chloroprene/neoprene medical examination gloves in the same or nearly the same dark green color as in [the] proposed mark." J.A. 13. While Medisafe claimed to be the manufacturer behind 15 of the screenshot examples, Medisafe made no such claim as to the other 10. The Board found all 25 screenshots to be probative of genericness because "[t]he relevant consumer – even including unspecified 'authorized resellers' – could be exposed to . . . gloves that appear under a large number of third-party marks without identifying [Medisafe] as the source or manufacturer." J.A. 14.

The Board also evaluated Medisafe's evidence that manufacturers make gloves in other colors besides the dark green of Medisafe's proposed mark. It also considered customer declarations and a survey submitted by Medisafe. The Board placed little weight on this evidence because the other color gloves were not probative of whether the color Medisafe used is generic, the declarations were not "sufficiently representative or convincing of the relevant consumer perception of the proposed mark in general to carry

much weight," and the survey was "so flawed as to be entitled to no probative weight." J.A. 40, 44.[3]

The Board's genericness determination "serves as an absolute bar to registration." J.A. 45. Nonetheless, like the examining attorney, the Board proceeded to consider acquired distinctiveness, agreeing that Medisafe had failed to meet its burden on this ground as well. Thus, the Board affirmed the examining attorney's refusal to enter the proposed mark on either the principal or supplemental registers.

Medisafe timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## II

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *See In re Cordua Rests., Inc.*, 823 F.3d 594, 599 (Fed. Cir. 2016). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938). Whether the Board applied the proper test in assessing whether a mark is generic is a question of law, but "whether a particular mark is generic under the applicable standard is a question of fact, which we review for substantial evidence." *In re Cordua Rests.*, 823 F.3d at 599.

---

[3]   The Board explained that the survey was administered by Medisafe's counsel, not a survey expert; consisted of leading questions (e.g., "How long have you purchased the Medisafe dark green chloroprene glove, shown below?"); was sent to only six respondents, all of whom were part of Medisafe's established customer base; and only three of those six respondents submitted responses – one of whom responded that she did *not* consider Medisafe's color mark to be distinctive. J.A. 41; *see also* J.A. 42-44.

To refuse registration based on a proposed mark being generic, the examining attorney must "establish a prima facie case that a term is generic." *Trademark Manual of Examining Procedure* ("TMEP") § 1209.01(c)(i) (2022). Thereafter, "the burden shifts to the applicant to come forward with evidence to rebut the *prima facie* case." *In re Pacer Tech.*, 338 F.3d 1348, 1350 (Fed. Cir. 2003). Then the Board, in reviewing an examining attorney's refusal to register a mark, considers the full record and reaches its own conclusion as to whether the examiner made out a prima facie case and, if so, whether the applicant rebutted it, which may be accomplished by proving the mark had acquired distinctiveness. *See In re Steelbuilding.com*, 415 F.3d 1293, 1299 (Fed. Cir. 2005); *see also In re Oetiker*, 977 F.2d 1443, 1445 (Fed. Cir. 1992) ("In reviewing the examiner's decision on appeal, the Board [of Patent Appeals and Interferences] must necessarily weigh all of the evidence and argument."). We review for substantial evidence the Board's findings as to the prima facie case and whether it was rebutted by the applicant. *See In re Hotels.com, L.P.*, 573 F.3d 1300, 1301-02 (Fed. Cir. 2009); *see also In re Pacer Tech.*, 338 F.3d at 1352.[4]

---

[4]    Medisafe mistakenly suggests that on appeal the Board has a burden of proof and that this burden is to show by clear and convincing evidence that the proposed mark is generic. *See* Open. Br. at 10, 29. As the PTO correctly points out, the Board is a reviewing body, not a litigant, and has no burden of proof. *See* Resp. Br. at 18. Moreover, we have never held that the examining attorney must find genericness by clear and convincing evidence. A potentially confusing reference to "clear evidence" in the TMEP, which we referenced in *In re Hotels.com*, 573 F.3d at 1302, has recently been clarified and no longer suggests a clear and convincing evidence burden, *compare* TMEP § 1209.01(c)(i) (2021), *with* TMEP § 1209.01(c)(i) (2022).

### III

Medisafe argues that the Board applied the wrong legal standard for assessing whether a color mark is generic. Medisafe further contends that the Board's finding that its proposed mark is generic is not supported by substantial evidence. We disagree on both points, as we explain below.

### A

In evaluating whether Medisafe's proposed color mark is generic, the Board applied the two-part test it had set out in *Milwaukee Electric Tool*, 2019 WL 6522400, at *9. That test was itself a modification of our *H. Marvin Ginn* test, which had not expressly considered color marks. We agree with the Board that the *Milwaukee* test is appropriate and hereby adopt it.

In *H. Marvin Ginn*, 782 F.2d at 988, we reviewed the Board's cancellation of the mark FIRE CHIEF for a magazine directed to the field of firefighting. The Board had found the mark generic, but we reversed. *See id.* at 989, 991. In doing so, we explained that the Board's analysis, which was based primarily on cases relating to marks associated with magazines, was too narrow. *See id.* at 991. We set out the appropriate legal standard as follows:

> Determining whether a mark is generic therefore involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?

*Id.* at 990. While the facts of *H. Marvin Ginn* did not require us to consider color marks, we articulated our test as applying to "mark[s]," without limitation as to their type.

More than three decades later, in *Milwaukee*, the Board confronted the issue of whether a color mark was generic. Expressly relying on *H. Marvin Ginn*, the Board

found it "appropriate to apply a two-step inquiry to determine genericness of a single color similar to the inquiry we apply to word marks and other kinds of trade dress." 2019 WL 6522400, at \*9.  The *Milwaukee* test begins with the same inquiry as *H. Marvin Ginn*, requiring identification of the genus of goods or services at issue.  *Compare* 2019 WL 6522400, at \*9, *with* 782 F.2d at 990.  The *Milwaukee* test then slightly modifies the second-step inquiry to tailor it to color marks.  Whereas *H. Marvin Ginn* asks whether "the *term* sought to be registered or retained on the register [is] understood by the relevant public primarily to refer to [a] genus of goods or services," 782 F.2d at 990 (emphasis added), *Milwaukee* asks "whether the *color* sought to be registered . . . is understood by the relevant public primarily as a category or type of trade dress for [a] genus of goods or services," 2019 WL 6522400, at \*9 (emphasis added).

Here, the Board applied the *Milwaukee* test to Medisafe's proposed color mark.  *See* J.A. 6-13.  Medisafe asserts this was legal error.  We disagree.

The *Milwaukee* test is entirely consistent with *H. Marvin Ginn*.  *Milwaukee* minimally, but appropriately, modifies *H. Marvin Ginn* to address the specific circumstances of a *color* mark being assessed for genericness.  *See generally Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995) ("It is the source-distinguishing ability of a mark – not its ontological status as color, shape, fragrance, word, or sign – that permits it to serve [the] basic purposes [of trademark law].").

Medisafe's principal attack on the *Milwaukee* test is that it purportedly ignores statutory language, which allows for cancellation of a mark for genericness only where that mark is a "generic *name*."  *See, e.g.*, Open. Br. at 17 ("There are many problems with the [Board's] *Milwaukee* test but the most obvious is that 'trade dress' is not the name of a genus of goods or services . . . .").  Medisafe

predicates this contention on 15 U.S.C. § 1064(3), which provides that a registered mark may be cancelled "[a]t any time if the registered mark becomes the generic *name* for the goods or services, or a portion thereof, for which it is registered" (emphasis added). According to Medisafe, this "generic *name*" requirement applies equally to all types of marks, meaning that trade dress – including a color mark – may, like a word mark, be found generic only if it is a "generic *name*" for the goods with which it is used.

We considered, and rejected, essentially this same contention in *Sunrise Jewelry Manufacturing Corp. v. Fred S.A.*, 175 F.3d 1322 (Fed. Cir. 1999). In *Sunrise Jewelry*, the Board had concluded that a registered mark of a "metallic nautical rope design" for clocks, watches, and jewelry could not be cancelled as generic because, as trade dress, the design could not be a "generic name." *Id.* at 1323, 1325. We disagreed with the contention that "the plain meaning of 'generic name' in § 1064(3) excludes trade dress" and held, instead, that the statutory language "must be read expansively to encompass anything that has the potential but fails to serve as an indicator of source, such as . . . trade dress." *Id.* at 1325-26. "Any narrower interpretation of 'generic name' would," we explained, accord trade dress "more protection than a word mark under the Lanham Act," and thereby "directly contravene the purpose of the Lanham Act." *Id.* We reiterate, as we held in *Sunrise Jewelry, id.* at 1326, "trade dress," including a color mark, "that cannot serve as an indicator of source is generic and unprotectable."[5]

---

[5]    At oral argument, counsel for Medisafe conceded that a color mark can be generic. *See* Oral Argument at 2:32-2:44,    available    at    https://oralarguments.cafc. uscourts.gov/default.aspx?fl=23-1573_08082024.mp3.

B

Applying the *Milwaukee* test, we conclude that substantial evidence supports the Board's determination that Medisafe's proposed color mark is generic.

At the first step of the inquiry, the Board identified the genus of goods at issue as "chloroprene medical examination gloves." J.A. 8. Substantial evidence supports this finding, including the fact that Medisafe's initial application identified the goods for which it sought to register its marks as "[m]edical examination gloves." J.A. 53. The Board did not err in rejecting Medisafe's amended application's narrowing of the goods at issue to "chloroprene medical gloves *sold only to authorized resellers*." J.A. 10-11 (emphasis added).[6] The Board is not compelled to accept an applicant's proposed definition of the applicable genus, and was right not to "limit the universe of chloroprene medical examination gloves under evidentiary consideration to [Medisafe's] own products." J.A. 10-11 (citing *In re i.am.symbolic, LLC*, 866 F.3d 1315, 1324 (Fed. Cir. 2017) (finding no error where Board refused to limit identification of goods to products "associated with" singer will.i.am)).

Turning to the second step, substantial evidence supports the Board's finding, which it reached after reviewing the entire record, that Medisafe's color mark "is so common in the chloroprene medical examination glove industry that

---

[6] Although Medisafe frames its "authorized resellers" argument as directed to the definition of the relevant public, part of the second step of the genericness inquiry, we view Medisafe's argument as challenging the Board's exclusion of the authorized retailer limitation from the genus of goods at issue. At either the first or second step of the *Milwaukee* test, Medisafe points to no meritorious reason to include its "authorized resellers" limitation.

it cannot identify a single source" and is, therefore, generic. J.A. 45. This evidence includes screenshots of third-party websites showing unaffiliated sellers of "chloroprene/neoprene medical examination gloves in the same or nearly the same dark green color as in [the] proposed mark," J.A. 13; customer declarations, which the Board reasonably found are not "sufficiently representative or convincing of the relevant consumer perception of the proposed mark in general to carry much weight," especially because the "declarations are few in number, identical in form (which, while not fatal, makes them less persuasive), and relatively conclusory," J.A. 40; and the survey, whose "flaws" the Board reasonably found "too numerous to detail" and include that they were "conducted by Applicant's counsel," who was not qualified as a survey expert, was given "to a small subset of Applicant's established customer base," and relied on "leading" questions (nevertheless resulting in one of three respondents "indicat[ing] that Applicant's proposed color mark was *not distinctive* in the industry"), J.A. 41-44.[7]

In sum, as the Board recognized, while a color mark may serve as a source indicator, substantial evidence supports the Board's finding that Medisafe's proposed mark failed to do so. J.A. 39 ("There is no question that color marks generally are capable of serving as source-indicators – that is not the ground for refusal here. Rather, the relevant inquiry focuses on the consumer perception of the

---

[7]    Medisafe points out that the Board reproduced in its opinion a different specimen of its mark than what Medisafe's survey used. Open. Br. at 34-35 (comparing J.A. 252 with J.A. 43); Reply Br. at 17-18. This error cannot have had any impact on the Board's analysis and, hence, is harmless. *See generally Swagway, LLC v. Int'l Trade Comm'n*, 934 F.3d 1332, 1343 (Fed. Cir. 2019) (finding that error was harmless in absence of showing of any prejudice).

particular color at issue as to the genus set by Applicant's identified goods."). Therefore, we affirm the Board's determination that Medisafe's proposed mark is generic and, hence, ineligible for registry on either the principal or supplemental registers.

## IV

We have considered Medisafe's remaining arguments and find them either unnecessary to address or unpersuasive.[8] For the reasons stated above, we affirm the Board's decision.

**AFFIRMED**

---

[8] We do not reach Medisafe's challenges to the Board's finding that it failed to prove acquired distinctiveness. Because a generic mark is "the ultimate in descriptiveness," it "cannot acquire distinctiveness." *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 972 n.3 (Fed. Cir. 2018).